936 So.2d 1049 (2006)
Ex parte UNITED INSURANCE COMPANIES, INC.
(In re Patricia M. Jackson
v.
MEGA Life and Health Insurance Company et al.).
Ex parte UICI Marketing, Inc.
(In re Patricia M. Jackson
v.
MEGA Life and Health Insurance Company et al.).
Ex parte United Group Service Centers, Inc.
(In re Patricia M. Jackson
v.
MEGA Life and Health Insurance Company et al.).
Ex parte Specialized Association Services, Inc.
(In re Patricia M. Jackson
v.
MEGA Life and Health Insurance Company et al.).
1041704, 1041705, 1041888 and 1041889.
Supreme Court of Alabama.
February 10, 2006.
*1050 Henry C. Callaway, E. Luckett Robinson II, and Lisa Darnley Cooper of Hand Arendall, L.L.C., Mobile, for petitioners United Insurance Companies, Inc., and UICI Marketing, Inc.
John N. Bolus of Maynard, Cooper & Gale, P.C., Birmingham, for petitioners United Group Service Centers, Inc., and Specialized Association Services.
Phillip W. McCallum, James M. Terrell, and P. Michael Yancey of McCallum, Methvin & Terrell, P.C., Birmingham, for respondent.
STUART, Justice.
United Insurance Companies, Inc. ("UICI"), UICI Marketing, Inc., United Group Service Centers, Inc. ("UGSC"), and Specialized Association Services, Inc. ("SAS") (hereinafter referred to collectively as "the petitioners"), petition this Court for writs of mandamus directing the trial court to vacate its order denying their motions to dismiss Patricia M. Jackson's claims against them for lack of personal jurisdiction and to enter an order dismissing Jackson's complaint insofar as it asserts claims against them. We deny the petitions.

Facts
Jackson sued the petitioners; her health insurer, MEGA Life and Health Insurance Company ("MEGA"); and others regarding the sale and administration of her health-insurance certificate issued by MEGA allegedly through the combined sales and marketing efforts of UICI, UICI Marketing, MEGA, UGSC, SAS, and the National Association for the Self-Employed ("the NASE"). Apparently, Jackson became associated with the NASE, an independent, not-for-profit association formed to independently research, negotiate, and endorse unaffiliated health-insurance carriers for the benefit of the members of the NASE; based on the NASE's endorsement of the insurance offered by MEGA she purchased a MEGA insurance certificate.
According to Jackson's complaint, UICI is the parent and sole shareholder of MEGA and UICI Marketing. The NASE, which is managed by SAS and, according to Jackson, is also under the control of UICI and MEGA, endorses only MEGA insurance policies. UICI Marketing generates potential policy purchasers, like Jackson, by using the NASE's endorsement of MEGA in Internet advertising, print ads, signs, direct mail, and telemarketing. UGSC trains the NASE enrollers to approach potential leads generated by UICI Marketing. Jackson, however, alleges that the NASE enrollers, who she says are UICI agents, are actually insurance agents because, she says, the enrollment application for the NASE is an insurance application and with the completion of the application the enroller collects an "[NASE] association initiation fee" or registration fee, NASE dues, and the first month's premium payment.
Jackson further alleges that UICI is controlled by Ronald Jensen, that the NASE was established by a former business partner of Jensen's and is controlled by Jensen-family-owned businesses, and that SAS is run by Jensen's son, but controlled by Jensen and other family members. Jackson alleges that all the companies work together to form a mechanism that allows them to avoid insurance regulations in implementing fraudulent writing of policies and pooling practices.
In her complaint, Jackson alleged claims of breach of fiduciary and trust duties, breach of contract, fraudulent suppression, unjust enrichment, civil conspiracy, fraud, breach of implied contract to procure insurance, negligence, negligence per se, *1051 wantonness, conversion, bad-faith refusal to pay and bad-faith refusal to investigate. With regard to her claim of civil conspiracy, Jackson averred:
"78. [Jackson] hereby adopts and incorporates by reference all preceding paragraphs and further alleges:
"79. Defendants [UICI, UICI Marketing, UGSC, SAS, and MEGA] have engaged in an unlawful conspiracy to breach fiduciary duties, breach contracts and to mislead [Jackson], regarding among other things, (a) the full and true nature of the relationship between the Defendants, (b) the full and true nature of Defendants trust `group' health coverage, (c) the full and true nature and manner in which premiums and premium increases would be determined and/or calculated for [Jackson], (d) the fact that the health insurance coverage marketed by Defendants was not a true group policy; (e) the fact that premium increases could be affected by individual claims experience, and (f) the fact that once premium increases began, the Defendants' intent, purpose and goal was to make the coverage so expensive that [Jackson] and other insureds would no longer be able to afford the premiums and thus be forced to let the policy lapse.
"80. Defendants also combined and joined in a concerted effort to formulate a fraudulent and deceitful marketing scheme which prevented [Jackson] and others from discovering the true relationship of the related Defendants and their plans to extort and later share exorbitant fees and charges passed on to NASE participants.
"81. As a direct, foreseeable and proximate result thereof, [Jackson] was caused to suffer actual damages and will suffer such damages in the future."
The petitioners moved for a dismissal of Jackson's claims pursuant to Rule 12(b)(2), Ala. R. Civ. P., maintaining that the trial court did not have personal jurisdiction over them. In support of their motions, the petitioners filed affidavits from officers in their companies.
The vice president of UICI averred in his affidavit that UICI is a holding company incorporated in Delaware with its principal place of business in the State of Texas; that it is the parent company of MEGA; that MEGA is a wholly owned, independently operated subsidiary of UICI; that "UICI is not an insurer and does not participate in the business of insurance"; that UICI is not registered to do business in the State of Alabama; that it has never conducted business in Alabama; that it is not required to and has never filed a tax return in Alabama; that it does not own property in Alabama; that it does not maintain any offices or a telephone listing or have any employees in Alabama; and that it had no involvement in the marketing, sale, underwriting, or administration of any insurance coverage issued to Jackson or any other resident in Alabama.
Similarly, the affidavit of the controller and treasurer of UICI Marketing averred that UICI Marketing is a Delaware corporation with its principal place of business in Texas; that it is not an insurer and does not participate in the business of insurance; that it is not registered as an insurer in Alabama; that it is not registered to do business in Alabama; that it does not pay Alabama taxes or own property in Alabama; that it has no employees in Alabama; that it does not have a telephone listing in Alabama; that it has never conducted any business in Alabama; and that it was not involved in the sale, underwriting, or administration of any insurance *1052 coverage issued to Jackson or any other Alabama resident.
The officer for UGSC averred in her affidavit in support of UGSC's motion to dismiss that UGSC is a registered and licensed Texas staff-leasing-service company with its principal place of business in Texas; that it had not conducted business in Alabama; that it has no employees in Alabama; that it is not required to be registered, licensed, or otherwise qualified to do business in Alabama; that it is not required to file any type of tax return in Alabama; that it does not maintain any offices in Alabama; that it does not own any property in Alabama; that it has never maintained any offices in Alabama; that it does not employ any insurance agents in Alabama; that it does not derive substantial revenue from goods, services, or products from Alabama; that it did not solicit, market, sell, issue, underwrite, or administer Jackson's insurance certificates; and that it has never solicited, marketed, sold, issued, underwritten, or administered insurance in Alabama.
The director of operations for SAS averred in her affidavit in support of SAS's motion to dismiss that SAS is a Texas corporation with its principal place of business in Texas; that it provides its clients with a number of "back office" administrative services; that it does not conduct business in Alabama; that it is not registered, licensed, or qualified to do business in Alabama; that it is not required to file any type of tax return in Alabama; that it does not have employees in Alabama; that it does not maintain an office in Alabama; that it does not own real property in Alabama; that it does not maintain a telephone listing in Alabama; that it does not have any sales representatives in Alabama; that it does not advertise its services in Alabama; that it does not derive substantial revenue from goods, services, or products consumed in Alabama; that it did not solicit, sell, issue, underwrite, or administer Jackson's insurance certificates or any other insurance certificates sold in Alabama; and that it does not control the NASE.
In response to the motions, Jackson argued that her complaint, which detailed the relationship of the petitioners with MEGA, the alleged marketing scam, and the claim of conspiracy, established personal jurisdiction. Jackson did not file an affidavit or other evidence to substantiate the factual allegations in her complaint, but she did request the opportunity to conduct discovery "to cross-examine the individuals whose affidavits have been submitted in support of the motions to dismiss and to further evidence the conspiracy that has been alleged in the complaint."
The trial court denied the petitioners' motions to dismiss. The petitioners then filed their petitions for writs of mandamus, asking this Court to direct the trial court to vacate its order denying their motions to dismiss the complaint against them and to grant their motions to dismiss for lack of personal jurisdiction.

Standard of Review
"A petition for a writ of mandamus is the appropriate remedy by which to challenge an interlocutory order on the issue of personal jurisdiction, and a writ will issue only upon a showing of `(a) a clear legal right in the petitioner to the order sought, (b) an imperative duty upon the respondent to perform, accompanied by a refusal to do so, (c) the lack of another adequate remedy, and (d) the properly invoked jurisdiction of the court.' Ex parte McInnis, 820 So.2d 795, 798 (Ala.2001)."
Ex parte Puccio, 923 So.2d 1069, 1072 (Ala.2005). Moreover, "[a]n appellate court considers de novo a trial court's judgment on a party's motion to dismiss *1053 for lack of personal jurisdiction." Elliott v. Van Kleef, 830 So.2d 726, 729 (Ala.2002).

Discussion
The petitioners contend that the trial court erred in denying their motions to dismiss because, they say, uncontroverted evidence presented through the affidavits of their officers clearly established that the trial court does not have personal jurisdiction over them.
"`Jurisdiction is obtained over out-of-state defendants pursuant to the "long-arm" rule, Ala. R. Civ. P. 4.2(a)(2)(A)-(I).[[1]] Recently, we explained:
"`"`A physical presence in Alabama is not a prerequisite to personal jurisdiction over a nonresident.' Sieber v. Campbell, 810 So.2d 641, 644 (Ala.2001). What is required, however, is that the defendant have such contacts with Alabama that it `"should reasonably anticipate being haled into court [here]."' Dillon Equities v. Palmer & Cay, Inc., 501 So.2d 459, 462 (Ala.1986)(quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).
"`"Depending on the quality and quantity of the contacts, jurisdiction may be either general or specific. Leventhal v. Harrelson, 723 So.2d 566, 569 (Ala.1998). `General jurisdiction applies where a defendant's activities in the forum state are "substantial" or "continuous and systematic," regardless of whether those activities gave rise to the lawsuit.... A court has specific jurisdiction when a defendant has had few contacts with the forum state, but those contacts gave rise to the lawsuit.' Id.

"`"But regardless of whether jurisdiction is alleged to be general or specific, the nexus between the defendant and the forum state must arise out of `"an action of the defendant [that was] purposefully directed toward the forum State."' Elliott [v. Van Kleef], 830 So.2d [726] at 731 [(Ala.2002)] (quoting Asahi Metal Indus. Co. v. Superior Court of California, 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)). `This purposeful-availment requirement assures that a defendant will not be haled into a jurisdiction as a result of "`the unilateral activity of another person or a third person.'"' Elliott, 830 So.2d at 731 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985))." "`Ex parte Dill[, Dill, Carr, Stonbraker & Hutchings, P.C.], 866 So.2d [519,] 525 [(Ala.2003)].'
"[Ex parte Troncalli Chrysler Plymouth Dodge, Inc.,] 876 So.2d [459,] 463 [(Ala. 2003)].
"This Court recently summarized a plaintiff's burden, once the defendant has made a prima facie showing that the court lacked personal jurisdiction as to the defendant.
"`[I]f the defendant makes a prima facie evidentiary showing that the Court has no personal jurisdiction, "the plaintiff is then required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and he may not merely reiterate the factual allegations in the complaint." Mercantile *1054 Capital, LP v. Federal Transtel, Inc., 193 F.Supp.2d 1243, 1247 (N.D.Ala. 2002) (citing Future Tech. Today, Inc. v. OSF Healthcare Sys., 218 F.3d 1247, 1249 (11th Cir.2000)). See also Hansen v. Neumueller GmbH, 163 F.R.D. 471, 474-75 (D.Del.1995) ("When a defendant files a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2) [i.e., for lack of personal jurisdiction], and supports that motion with affidavits, plaintiff is required to controvert those affidavits with his own affidavits or other competent evidence in order to survive the motion.")(citing Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 63 (3d Cir.1984)).'
"Ex parte Covington Pike Dodge, Inc., 904 So.2d 226, 229-30 (Ala.2004) (footnote omitted)."
Ex parte Unitrin, Inc., 920 So.2d 557, 560-61 (Ala.2005).
By submission of their affidavits in support of their motions to dismiss, the petitioners made a prima facie evidentiary showing that the trial court lacked personal jurisdiction; therefore, the burden then shifted to Jackson to present competent proof to substantiate her allegation that the trial court had personal jurisdiction over the petitioners. Jackson, however, did not present any proof to support her jurisdictional allegation; she argued that the particularity and specificity with which she pleaded her claim that a civil conspiracy existed among the petitioners adequately established the trial court's personal jurisdiction over them.
The petitioners argue that because Jackson did not present any evidence to substantiate her jurisdictional allegation, the trial court erred in refusing to dismiss Jackson's claims against them. The petitioners maintain that the application of our holding in Ex parte Unitrin requires a finding that the trial court lacks personal jurisdiction over them. In Ex parte Unitrin, the holder of an insurance policy sued Unitrin and others claiming that they had fraudulently collected premiums on a lapsed life-insurance policy. Unitrin moved to dismiss the claims against it because, it said, the trial court lacked personal jurisdiction. In support of its motion to dismiss, Unitrin attached an affidavit from its vice president, in which the vice president stated that Unitrin was not qualified to do business in any state other than Illinois, that it did not conduct business in Alabama, that it did not own real or personal property in Alabama, that it did not maintain any office or have any employees in Alabama, and that it did not receive any portion of the premiums collected by United, a wholly owned subsidiary of Unitrin that is a separate entity from Unitrin. This Court did not find the following evidence to be competent proof to substantiate the jurisdictional allegations in the complaint: the policyholder's submission of Unitrin's 2003 annual report; a printout of information from the Web site of the Alabama secretary of state indicating that a corporate name had been reserved for an entity listed as Unitrin Auto and Home Insurance and located at Unitrin's Chicago address; and another printout of information from the same Web site indicating that the reporting address for Unitrin Internal Audit Services, Inc., reflected in Unitrin's annual reports for 2003 and 2004 was the same address listed for Unitrin. After thoroughly reviewing the documents, this Court concluded that the information relied upon by the policyholder did not refer to Unitrin, but to three wholly owned subsidiaries of Unitrin's and held that the trial court had erred in denying Unitrin's motion to dismiss. Specifically, this Court held that "doing business through a wholly owned subsidiary does not, in and of itself, *1055 constitute doing business by the parent corporation." 920 So.2d at 561.
In her answer and brief to this Court, Jackson argues that the particularity with which she pleaded her civil-conspiracy claim establishes that the petitioners are doing business in Alabama and, consequently, that the trial court has personal jurisdiction over the petitioners. Essentially, she argues that while the facts presented here and in Unitrin are similar, the facts in Unitrin are distinguishable because, she says, Unitrin did not involve a conspiracy among the defendants.
The appropriate response for a plaintiff who is confronted with a motion to dismiss for lack of personal jurisdiction that is supported by affidavits is to offer evidence to the contrary. See Ex parte Covington Pike Dodge, Inc., 904 So.2d 226, 230 (Ala.2004). Jackson did not do so. However, under the facts of this case, especially in light of the specificity with which Jackson pleaded her claim of civil conspiracy and her request at the time she opposed the motions for the opportunity to conduct further discovery, the petitioners did not establish a clear legal right to have the complaint against them dismissed.
In Ex parte McInnis, 820 So.2d 795, 806-07 (Ala.2001), this Court addressed the issue whether a claim of civil conspiracy adequately established a court's personal jurisdiction over corporate agents, stating:
"`"Bald speculation" or a "conclusionary statement" that individuals are co-conspirators is insufficient to establish personal jurisdiction under a conspiracy theory. Naartex Consulting Corp. v. Watt, 722 F.2d 779, 787 (D.C.Cir. 1983), cert. denied, 467 U.S. 1210, 104 S.Ct. 2399, 81 L.Ed.2d 355 (1984). Instead, the plaintiff must plead with particularity "the conspiracy as well as the overt acts within the forum taken in furtherance of the conspiracy." Dooley v. United Technologies Corp., 786 F.Supp. 65, 78 (D.D.C.1992) (citing Naartex, 722 F.2d at 787 and First Chicago Int'l v. United Exchange Co., Ltd., 836 F.2d 1375, 1378-79 (D.C.Cir.1988))."'
"Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan, 115 F.3d 1020, 1031 (D.C.Cir.1997)."
Here, Jackson did plead in detail the corporate relationship of the petitioners and the role each petitioner allegedly played in the alleged civil conspiracy. Indeed, she pleaded her facts supporting her conspiracy claim with such specificity that the petitioners were able to file affidavits in which each petitioner denied the control and involvement alleged in the civil-conspiracy claim. For example, the petitioners in the affidavits in support of their motions to dismiss refuted Jackson's allegations, stating that their companies were not insurers; that they were not in the business of insurance; and that they did not participate in the sale, underwriting, or administration of any insurance coverage to Jackson or any other resident in Alabama. These statements address Jackson's allegations of the existence of a civil conspiracy among the petitioners with such specificity that it is clear that Jackson's complaint contained more than "bald speculation" and "conclusory statements" that the petitioners were involved in a conspiracy. Therefore, Jackson's reliance on her factual allegations in the complaint did adequately rebut the petitioners' affidavits to survive the motions to dismiss to the extent that she is entitled to further discovery on personal jurisdiction.
In Ex parte Troncalli Chrysler Plymouth Dodge, 876 So.2d 459, 467-68 (Ala. 2003), this Court addressed discovery for *1056 the purpose of determining jurisdiction, stating:
"`"It is well established that a ... court has the power to require a defendant to respond to discovery requests relevant to his or her motion to dismiss for lack of jurisdiction."' Andersen v. Sportmart, Inc., 179 F.R.D. 236, 241 (N.D.Ind.1998) (quoting Ellis v. Fortune Seas, Ltd., 175 F.R.D. 308, 311 (S.D.Ind. 1997)). `However, it is also well established that a plaintiff does not enjoy an automatic right to discovery pertaining to personal jurisdiction in every case.' Id. `[T]o be permitted jurisdictional discovery, plaintiff must at least allege facts that would support a colorable claim of jurisdiction.' Schenck v. Walt Disney Co., 742 F.Supp. 838, 840 n. 1 (S.D.N.Y. 1990) (emphasis added). See also Ellis v. Fortune Seas, Ltd., 175 F.R.D. 308, 312 (S.D.Ind.1997); Hansen v. Neumueller GmbH, 163 F.R.D. 471, 475 (D.Del.1995); Daval Steel Prods. v. M.V. Juraj Dalmatinac, 718 F.Supp. 159, 162 (S.D.N.Y.1989); Rich v. KIS California, Inc., 121 F.R.D. 254, 259 (M.D.N.C. 1988).
"A request for jurisdictional discovery must offer the court `more than conjecture and surmise in support of [the] jurisdictional theory.' Crist v. Republic of Turkey, 995 F.Supp. 5, 13 (D.D.C. 1998). `[The] standard is quite low, but a plaintiff's discovery request will nevertheless be denied if it is only based upon "bare," "attenuated," or "unsupported" assertions of personal jurisdiction, or when a plaintiff's claim appears to be "clearly frivolous."' Andersen, 179 F.R.D. at 242."
Jackson met this standard, and further discovery at this stage in the proceeding is warranted. We note that the trial court's denial of the petitioners' motions to dismiss for lack of personal jurisdiction is interlocutory and preliminary only. The petitioners can continue to challenge personal jurisdiction in their answers to the complaint and by motions for a summary judgment or at trial. Ex parte McInnis, 820 So.2d at 798.

Conclusion
The petitioners have failed to establish a clear legal right to have the claims against them dismissed for lack of personal jurisdiction; therefore, their petitions are denied.
PETITIONS DENIED.
NABERS, C.J., and LYONS, HARWOOD, WOODALL, SMITH, BOLIN, and PARKER, JJ., concur.
NOTES
[1] Effective August 1, 2004, Rule 4.2 was amended to delete the "laundry list" of types of conduct that would subject an out-of-state defendant to personal jurisdiction in Alabama formerly found in subdivisions (A)-(H), retaining the "catchall" clause formerly found in subdivision (I).