[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 440 
Keith Barton, a defendant in an action pending in the Baldwin Circuit Court, petitions for a writ of mandamus directing that court to vacate its order denying Barton's motion to dismiss the claims asserted against him by Martha Ann Cooper and Kenneth Lambert ("the plaintiffs") and to enter an order dismissing all claims against him on the basis of lack of personal jurisdiction. We deny the petition.
 Facts and Procedural History
According to the complaint, the plaintiffs, Alabama residents, were approached by Stephen A. Shannon, an Alabama resident and owner of Shannon Systems, Inc. ("SSI"). Shannon proposed that he and the plaintiffs enter into a joint venture to acquire a certain parcel of property in Perdido Key, Florida, and develop it into a condominium complex ("the project"), which they would subsequently sell for a profit.
In November 2002, the plaintiffs and Shannon executed a letter of intent to form a limited liability partnership named Gulf Development, L.L.P. ("Gulf Development"), the stated purpose of which was to acquire and develop land in Alabama and Florida. Gulf Development was to purchase the Perdido Key property ("the property"); the plaintiffs were to fund the purchase; and SSI and Shannon were to "package" and manage the construction project. The plaintiffs together were to receive 50% of the "final proceeds" after completion of the project, and Shannon and SSI were to receive the remaining 50%. Gulf Development was subsequently formed and registered in the State of Florida. Its "chief executive office" was located *Page 441 
in Gulf Shores, Alabama, apparently in SSI's offices.
Shannon selected The Bank of Pensacola ("the bank"), located in Pensacola, Florida, from which to acquire a loan for the purchase of the property. The plaintiffs assert that on the "eve" of the closing on the property, Shannon falsely represented to them that the bank required additional obligors on the loan because, he told them, the plaintiffs and Shannon were not sufficiently creditworthy. Shannon further allegedly represented that they had to act immediately or they would lose the property and certain earnest money. Shannon suggested that "he had a friend in Mississippi," David Kelly, who could bring in a "Utah group" as an additional investor in the project.
In reliance on Shannon's representations, the plaintiffs agreed to allow Greenway Properties, L.L.C. ("Greenway") — an entity owned by Kelly — and KMJ Commercial Funding, LLC ("KMJ"), to become partners in Gulf Development. The plaintiffs asserted in the complaint that Barton — a Utah resident — was the principal owner and officer of KMJ and that KMJ was a Utah company conducting business in Alabama. A new partnership agreement for Gulf Development was executed in January 2003, adding Greenway and KMJ as partners. It appears from the materials submitted to this Court that KMJ and Greenway contributed no capital and together were granted a 25% interest in the partnership. The plaintiffs' ownership interest in Gulf Development was thereby reduced from 50% to 37.5%.
Gulf Development began operating out of Shannon's offices in Baldwin County. In January 2003, Gulf Development executed a note with the bank for a loan in the amount of $1,331,168.88 and used the proceeds to purchase the property. Gulf Development, the plaintiffs, and Barton were listed on the note as borrowers and their address was shown as Gulf Shores, Alabama. Barton states in his petition that he provided the bank with a personal balance sheet and personally guaranteed the loan.
Subsequently, a dispute arose between the plaintiffs and Shannon concerning the management of the construction project and Gulf Development. The plaintiffs filed a complaint, which was later amended, seeking damages against Shannon, SSI, Greenway, Kelly, KMJ, and Barton, for, among other things, fraud, suppression, and civil conspiracy. Specifically, the plaintiffs alleged that Shannon falsely represented that additional investors were necessary to obtain financing for the project, that they relied on that representation, and that they executed a new partnership agreement adding Greenway and KMJ as partners, thus reducing the plaintiffs' interests in the partnership and allowing Greenway and KMJ to have an ownership interest in the partnership without contributing any capital. The plaintiffs further alleged that Greenway, Kelly, KMJ, and Barton were aware of and ratified the representation made by Shannon and that all the defendants intended that the plaintiffs' ownership interests would be diluted to the defendants' benefit. The complaint states:
 "19. All of the Defendants conspired together, aided and abetted each other and agreed with the stated information to the Plaintiffs and suppressed] the truth regarding the lack of any true credit deficit. All of the Defendants acted in concert and conspired with each other to affirmatively make, through Shannon, the misrepresentations and suppressions outlined herein.
 "20. All of the Defendants intended or had reason to expect that the described misrepresentations to which *Page 442 
they all agreed and/or ratified would be conveyed or repeated or its substance communicated to the Plaintiffs by Shannon, that Plaintiffs' conduct would be influenced thereby to their detriment. Indeed, these misstatements were material and Plaintiffs did justifiably and reasonably rely upon these misrepresentations and were in fact harmed as a result.
 "21. All of the Defendants aided and abetted the suppressions of truth either negligently, recklessly or intentionally, with the intent that Plaintiff rely upon this failure to disclose. Each of these Defendants had a duty to provide accurate information and not suppress this information from Plaintiffs. This omitted information was material and was reasonably and justifiably relied upon by Plaintiffs. As a result of this concealment and the wrongful conduct perpetrated by these Defendants, Plaintiffs did not discover, and could not have discovered, this wrongful conduct until damages were already incurred and were continuing to be incurred.
 "22. Defendants' duty to disclose arose from the fact that these material facts were peculiarly in the knowledge of Defendants and not within the fair and reasonable reach of the Plaintiffs. Further, Defendants intended and acted to deceive Plaintiffs with their superior knowledge.
 ". . . .
 "24. Each of the Defendants had actual knowledge and substantive knowledge that Plaintiffs and Shannon had adequate credit for the acquisition loan and that giving any interest to KMJ or Greenway would dilute the ownership of the Plaintiffs. All of the Defendants, at all relevant times, had unique and superior knowledge unavailable to Plaintiffs. Each of the Defendants was aware of the misrepresentations and suppressions and was aware of their respective roles in promoting, aiding and abetting this fraudulent conduct and designed, contributed to and participated in this wrongful conduct. Defendants had this knowledge at the time they assisted one another. Each of the Defendants knowingly and intentionally aided and abetted and provided substantial assistance to each other in the described misrepresentations and suppressions of information. Each of the Defendants had a specific agreement to defraud and suppress information from the Plaintiffs."
Barton filed a motion to dismiss pursuant to Rule 12(b)(1) and (2), Ala.R.Civ.P., on the grounds that the trial court had no personal jurisdiction over him. The trial court denied the motion, and Barton filed this petition for the writ of mandamus.[1]
 Standard of Review
"A petition for a writ of mandamus is the appropriate remedy by which to challenge an interlocutory order on the issue of personal jurisdiction, and a writ will issue only upon a showing of `(a) a clear legal right in the petitioner to the order sought, (b) an imperative duty upon the respondent to perform, accompanied by a refusal to do so, (c) the lack of another adequate remedy, and (d) the properly invoked jurisdiction of the court.' Ex parte McInnis, 820 So.2d 795, 798
(Ala. 2001).
 "`In considering a Rule 12(b)(2), Ala.R.Civ.P., motion to dismiss for want of personal jurisdiction, a court must consider as true the allegations *Page 443 
of the plaintiff's complaint not controverted by the defendant's affidavits, Robinson v. Giarmarco Bill, P.C., 74 F.3d 253 (11th Cir. 1996), and Cable/Home Communication Corp. v. Network Productions, Inc., 902 F.2d 829 (11th Cir. 1990), and "where the plaintiff's complaint and the defendant's affidavits conflict, the . . . court must construe all reasonable inferences in favor of the plaintiff." Robinson, 74 F.3d at 255
(quoting Madam v. Hall, 916 F.2d 1510, 1514
(11th Cir. 1990)). "For purposes of this appeal [on the issue of in personam jurisdiction] the facts as alleged by the . . . plaintiff will be considered in a light most favorable to him [or her]." Duke v. Young, 496 So.2d 37, 38 (Ala. 1986).'
 "Ex parte McInnis, 820 So.2d at 798."
Ex parte Puccio, 923 So.2d 1069, 1072 (Ala. 2005).
 Discussion
In his petition, Barton argues that he did not have sufficient contacts with the State of Alabama for the trial court to have personal jurisdiction over him. We disagree.
 "`A physical presence in Alabama is not a prerequisite to personal jurisdiction over a nonresident.' Sieber v. Campbell, 810 So.2d 641, 644 (Ala. 2001). What is required, however, is that the defendant have such contacts with Alabama that it `"should reasonably anticipate being haled into court [here]."' Dillon Equities v. Palmer Cay, Inc., 501 So.2d 459, 462
(Ala. 1986) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).
 "Depending on the quality and quantity of the contacts, jurisdiction may be either general or specific. Leventhal v. Harrelson, 723 So.2d 566, 569 (Ala. 1998). `General jurisdiction applies where a defendant's activities in the forum state are "substantial" or "continuous and systematic," regardless of whether those activities gave rise to the lawsuit. . . . A court has specific jurisdiction when a defendant has had few contacts with the forum state, but those contacts gave rise to the lawsuit.' Id.
 "But regardless of whether jurisdiction is alleged to be general or specific, the nexus between the defendant and the forum state must arise out of `"an action of the defendant [that was] purposefully directed toward the forum State."' Elliott [v. Van Kleef, 830 So.2d 726, 731 (Ala. 2002)] (quoting Asahi Metal Indus. Co. v. Superior Court of California, 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)) `This purposefulavailment requirement assures that a defendant will not be haled into a jurisdiction as a result of "`the unilateral activity of another person or a third person.'"' Elliott, 830 So.2d at 731 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985))."
Ex parte Dill, Dill, Carr, Stonbraker Hutchings,P.C., 866 So.2d 519, 525-26 (Ala. 2003) (emphasis omitted).
The plaintiffs argue that the trial court had personal jurisdiction over Barton because, they allege, he was involved in a civil conspiracy and fraud scheme with the other defendants, which scheme was directed toward and impacted Alabama residents, viz., the plaintiffs.
Allegations of fraud or a civil conspiracy, in certain circumstances, have been held to be sufficient to establish personal jurisdiction over an alleged out-of-state conspirator.Ex parte United Ins. Cos., 936 So.2d 1049, 1054-56
(Ala. 2006). See also Duke v. Young, 496 So.2d 37
(Ala. 1986) (holding *Page 444 
that an Alabama court had personal jurisdiction over certain nonresident corporate board members whose allegedly intentional and fraudulent acts were expressly "aimed" at Alabama); andShrout v. Thorsen, 470 So.2d 1222 (Ala. 1985) (holding that the trial court had personal jurisdiction over an alleged out-of-state conspirator in a fraud scheme because the alleged conspirator acted to further a plan that contemplated the injury of an Alabama resident).
In Duke v. Young, six nonresident directors of a Georgia corporation purchased a business from Duke, an Alabama resident. Duke subsequently alleged that the directors acted in concert to fraudulently conceal a scheme to limit payments for the purchase of the business. Duke sued the directors in Alabama, seeking damages for fraudulent concealment of a material fact with the intent to induce Duke to enter into the contract for the sale of his business.
The directors challenged the personal jurisdiction of the Alabama trial court. This Court, in ruling that the trial court had personal jurisdiction, stated:
 "The focal point of the analysis is the alleged `contacts' which a defendant has with the forum state. Courts look to `the relationship among the defendant, the forum, and the litigation.' Shaffer v. Heitner, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977). . . . [A] presence or absence from the forum state is not the foundation upon which a determination [of personal jurisdiction] is made. Physical presence merely provides strong, objective evidence of sufficient contacts. The fundamental question is, did the defendant act in such a manner that he reasonably ought to anticipate the direct consequences of his actions to be felt by another person residing in another state?
 "This same point was established by the United States Supreme Court in Calder v. Jones, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). There the plaintiff was a resident of California. The defendants were residents of Florida. . . . The defendants were alleged to have authored and edited an article injurious to plaintiff, that article having been disseminated in, among other places, California. The Court did not find it necessary to look for physical contacts between the defendants and the forum state. It was the nature of the defendant's activities rather than the place of their occurrence that the Court considered: `[P]etitioners are not charged with mere untargeted negligence. Rather, their intentional, and allegedly tortious, actions were expressly aimed at California [T]hey knew [the article] would have a potentially devast[at]ing impact upon respondent. And they knew that the brunt of that injury would be felt by respondent in the State in which she lives. . . .' Id., 465 U.S. at 789-90, 104 S.Ct. at 1487, 79 L.Ed.2d at 812.
 "Crucial to the analysis is the element of foreseeability of the consequences of the defendant's activities. There must be a clear, firm nexus between the acts of the defendant and the consequences complained of in order to establish the necessary contacts. Explicitly approving the `effects' tests employed by the California court, the Supreme Court concluded, `[Petitioners are primary participants in an alleged wrongdoing intentionally directed at a California resident, and jurisdiction over them is proper on that basis.' Id., 465 U.S. at 790, 104 S.Ct. at 1487, 79 L.Ed.2d at 813.
 ". . . .
 ". . . Given the nature of the claim, it is not hard to envision how the acts of *Page 445 
the . . . six directors were `a significant aspect of the negotiations which occurred in Alabama and that it was foreseeable that appellants' . . . transaction would have consequences in this state.' Alabama Waterproofing Co. v. Hanby, 431 So.2d 141, 145
(Ala. 1983). The alleged fraudulent scheme may have been propounded, implemented, and directed by one or all of [the directors].
 ". . . The thrust of Duke's allegations is that [the directors] conspired to fraudulently conceal a material fact during the negotiations with Duke. This is certainly not an example of mere untargeted negligence. The defendants' `intentional, and allegedly tortious, actions were expressly aimed at' Alabama. Calder, supra, 465 U.S. at 789, 104 S.Ct. at 1487, 79 L.Ed.2d at 813."
496 So.2d at 39-40 (footnote omitted).
"`"Bald speculation" or a "conclusionary statement" that individuals are co-conspirators is insufficient to establish personal jurisdiction under a conspiracy theory. Instead, the plaintiff must plead with particularity "the conspiracy as well as the overt acts within the forum taken in furtherance of the conspiracy." Dooley v. United Technologies Corp., 786 F.Supp. 65, 78 (D.D.C. 1992).'" Ex parte McInnis,820 So.2d 795, 806-07 (Ala. 2001) (quoting Jungquist v. SheikhSultan Bin Khalifa Al Nahyan, 115 F.3d 1020, 1031
(D.C. Cir. 1997) (some citations omitted)). However, in this case, the plaintiffs allege that the defendants together conspired to make certain misrepresentations, through Shannon, to convince the plaintiffs to allow Greenway and KMJ into Gulf Development as partners even though new partners were unnecessary. Barton, who the plaintiffs alleged owned and operated KMJ, personally guaranteed the loan with the bank even though the plaintiffs' own creditworthiness was sufficient. The plaintiffs argue that they are Alabama residents and that Gulf Development, though registered in Florida, operates in Alabama. The plaintiffs thus contend that Barton acted in such a manner that he should have anticipated direct consequences for the plaintiffs in Alabama and that Barton's allegedly intentional and tortious actions were "expressly aimed" at Alabama and Alabama residents. The "thrust" of their allegations is that Barton conspired with the other defendants to misrepresent facts and to suppress information to the plaintiffs in Alabama regarding a partnership operating in Alabama.
In his motion to dismiss, Barton argued that he had not visited Alabama or conducted any business in Alabama that would create sufficient "minimum contacts" to bring him within the jurisdiction of the Alabama courts. In an affidavit filed in support of the motion, Barton asserted that he was a resident of Utah. Barton further stated that he was not a principal or shareholder of KMJ; instead, he said, KMJ is wholly owned by National Contract Servicing, LC ("NCS"), a limited liability company he formed in March 2003 but from which he had resigned at a later, undisclosed point in time. Barton stated that although he did agree to guarantee a loan to Gulf Development relating to the project, he had had no contact with Alabama and he had not transacted any business here in connection with his business dealings with Gulf Development. Barton states that never met or spoke to either of the plaintiffs and that has "never met" Shannon. Therefore, he contends, his contacts with Alabama were insufficient for the trial court to assert personal jurisdiction over him.
"[I]f the defendant makes a prima facie evidentiary showing that the Court has no personal jurisdiction, `the plaintiff is then required to substantiate the jurisdictional *Page 446 
allegations in the complaint by affidavits or other competent proof, and he may not merely reiterate the factual allegations in the complaint.'" Ex parte Covington Pike Dodge,Inc., 904 So.2d 226, 229-30. (Ala. 2004) (quotingMercantile Capital, LP v. Federal Transtel, Inc., 193 F.Supp.2d 1243, 1247 (N.D.Ala. 2002)).
In Ex parte Puccio, supra, the plaintiffs sued Cambridge Credit Counseling Corporation ("Cambridge"), a nonprofit credit-counseling service, and Puccio, one of Cambridge's corporate officers. The plaintiffs claimed that Cambridge made certain false representations to them and that it defrauded them. They further alleged that Cambridge acted essentially as an alter ego of Puccio, designed to generate profits for him.
Puccio filed a motion to dismiss, arguing that he had no contacts with Alabama and that personal jurisdiction over him as a corporate officer could not be predicated upon the trial court's jurisdiction over Cambridge. Puccio produced an affidavit stating that he had no financial interests in Alabama, that he had never spoken to the plaintiffs, and that he had executed an agreement between the plaintiffs and Cambridge only in his capacity as president of Cambridge.
In holding that Puccio had not established that the trial court lacked personal jurisdiction over him, this Court noted that Puccio did not address the factual allegations raised in the complaint to the effect that Cambridge was Puccio's alter ego. Instead, Puccio merely asserted that he was not an Alabama resident and that he had had insufficient contacts with Alabama to subject him to its jurisdiction. "In construing the allegations in the [plaintiffs'] complaint not controverted by Puccio as true, as we are required to do for the purposes of Puccio's motion to dismiss, Ex parte Covington Pike Dodge,supra, we cannot say that the trial court erred in denying the motion." Puccio, 923 So.2d at 1076.
As noted above, we consider as true the allegations of the Plaintiff's complaint that are not controverted by the defendant's affidavits. Ex parte Covington Pike Dodge, supra. Barton's motion to dismiss and supporting affidavit do not address any of the allegations by the plaintiffs that he conspired with Greenway and Shannon to reduce the plaintiffs' share in Gulf Development and that he joined with them in misrepresenting and suppressing information as to whether Greenway, KMJ, and Barton were necessary to secure the loan for Gulf Development. Barton does appear to claim in his affidavit that his relationship with KMJ was only through his ownership of NCS. However, NCS was formed in March 2003, after KMJ became a partner in Gulf Development in January 2003. Before that time, KMJ was owned in part by Beinhorn-PBG, LLC. According to the materials presented in the petition, Barton was a "principal" and "managing member" of that entity.[2] Barton's affidavit does not deny that he was involved in the operation of KMJ during the time the alleged mis-representations or conspiracy transpired in this case, and he does not deny that he spoke with Shannon[3] or Greenway or was otherwise not involved in any scheme to *Page 447 
tortiously induce the plaintiffs to reduce their partnership interest in Gulf Development. Instead, his evidence is similar to that produced by the defendant in Puccio — generic evidence that he had no contact with Alabama that does not address the factual assertions in the complaint demonstrating sufficient contacts with this state. This leaves uncontroverted the plaintiffs' allegations of contact through the conspiracy. Therefore, Barton has not established a prima facie case that the trial court lacks personal jurisdiction and has not demonstrated a clear legal right to mandamus relief.[4]
PETITION DENIED.
COBB, C.J., and SEE, WOODALL, and PARKER, JJ., concur.
[1] KMJ filed its own motion to dismiss for lack of personal jurisdiction. The trial court denied that motion. KMJ also petitioned this Court for a writ of mandamus, and we denied its petition. Ex parte KMJ Commercial Funding, LLC (No. 1050270), February 17, 2006.
[2] Beinhorn-PBG, LLC, is not mentioned in Barton's affidavit.
[3] On page eight of Barton's petition, he states that he "has never met or spoken with [the plaintiffs] or Defendant Stephen Shannon," and cites his affidavit. However, although the affidavit states that Barton had never met or spoken with the plaintiffs, it states only that he had never met
Shannon — it does not say that he had never spokenwith Shannon.
[4] "We note that the trial court's denial of the petitioners' motions to dismiss for lack of personal jurisdiction is interlocutory and preliminary only. The petitioners can continue to challenge personal jurisdiction in their answers to the complaint and by motions for a summary judgment or at trial." Ex parte United Ins. Cos.,936 So.2d 1049, 1056 (Ala. 2006) (citing Ex parte McInnis,820 So.2d 795, 798 (Ala. 2001)).