MURDOCK, Justice
(concurring specially).
I concur fully in the main opinion. I write separately to address the two grounds upon which Chief Justice Moore in Part II of his dissenting opinion finds mandamus to be an inappropriate remedy in this case.
A. Rule 5 “Permissive” Appeal as an Alternative “Adequate Remedy”
In Part II.A, the dissent concludes that mandamus is unavailable in a case such as this because Alamo Title Company (“Alamo”) could have sought permission to appeal the trial court’s interlocutory order denying its motion for dismissal based on lack of personal jurisdiction. In this regard, the dissent begins by comparing certain standards relating to mandamus and to Rule 5, Ala. R.App. P., permissive appeals and concluding that Rule 5 has a “far lower threshold of review.” 128 So.Sd at 721. With respect, I submit that the comparison made is inapt.
Specifically, the standard referenced for mandamus relief — a “clear legal right” to the relief — is the standard for actually “winning” relief in the appellate court. The standard referenced for Rule 5 — that there be a controlling question of law as to which there is “substantial ground for difference of opinion”- — is merely the standard that must be met to get one’s griev- *715 anee before the appellate court in the first place.
Further, the approach suggested by the dissent would mean that mandamus relief would be more freely available to litigants before the Court of Civil Appeals and the Court of Criminal Appeals, courts in which Rule 5 relief is not applicable under our rules, than to litigants before this Court.
More fundamentally, Rule 5 is indeed limited to rulings involving “questions of law” and, specifically, unsettled questions for which there is a ground for substantial difference of opinion. Such uncertainty simply is not characteristic of most disputes over subject-matter jurisdiction, in personam jurisdiction, immunity, venue, discovery, and fictitious-party practice in the context of a statute-of-limitations concern, all of which are subjects as to which legal principles are well established and as to which we repeatedly have held that mandamus relief may be appropriate. Instead, the types of disputes listed above typically turn, as does the dispute in the present case, on whether the trial court has exceeded its discretion in deciding whether the evidence presented justifies factual findings sufficient to meet a well settled legal standard.
Finally, but perhaps most importantly, there is no right to a Rule 5 certification. Granting “permission” to appeal an interlocutory order is within the wide discretion of the trial judge, and a question exists as to whether appellate relief would even be available on the ground that the trial court exceeded some measure of discretion.[4] Even if the trial court gives its consent, this Court must agree to accept the question certified. See Rule 5(c), Ala. R.App. P. I fail to see how that to which a party has no right can be deemed a true “remedy.”
B. “Further Litigation in the Trial Court” (and Eventually Taking an Appeal) as an “Adequate Remedy”
In Ex parte L.S.B., 800 So.2d 574 (Ala. 2001), this Court held that the standard for whether some remedy other than mandamus is “adequate” is not whether there simply is some other remedy, e.g., an eventual appeal, but whether that other remedy is “adequate to prevent undue injury.” 800 So.2d at 578. As a result, the Court noted that mandamus would lie to address certain discovery disputes, to enforce compliance with the court’s mandate, to enforce a right to a jury trial, and to vacate certain interlocutory rulings in divorce cases. Id. at 578. All of these — indeed, virtually any ground for mandamus relief — could eventually be raised in an appeal from a final judgment. Yet we do not consider this to be an “adequate” remedy in many cases.
Long before L.S.B. was decided, this Court discussed the requirement that the alternative remedy be adequate to avoid the particular harm at issue:
“[T]he appeal must be an adequate remedy[;] it must be capable of protecting *716 parties from the injury immediately resulting from the error of the court. While the error in refusing a dismissal for want of security for costs, may be available on error for the reversal of a judgment, obviously, an appeal is not an adequate remedy. The citizen is compelled into litigation with a non-resident, pending the further continuance of the suit and the appeal, without indemnity against the costs, the evil the statute intends to avoid. Hence, it has been the uniform course of decision that mandamus is an appropriate remedy to compel the dismissal of such suit.”
First Nat’l Bank of Anniston v. Cheney, 120 Ala. 117, 121-22, 23 So. 733, 734 (1898) (citations omitted).
The view expressed in Cheney is consistent with the view expressed elsewhere:
“It is the mere inadequacy and not the mere absence of all other legal remedies, and the danger of the failure of justice without it, that must usually determine the propriety of the writ. Where none but specific relief will do justice, specific relief should be granted if practicable, and when a right is single and specific it usually is practicable.
“To supersede the remedy by mandamus a party must not only have a specific, adequate, legal remedy, but one competent to afford relief upon the very subject of his application.”
2 W.F. Bailey, A Treatise on the Law of Habeas Corpus and Special Remedies 825-26 (1913) (emphasis added).
In the present case, the position expressed in Part II.B of the dissent is that mandamus does not lie to remedy the trial court’s failure to dismiss the claims against Alamo for lack of in personam jurisdiction because Alamo has available to it the following alternative and allegedly adequate remedy: ‘“continuing] to challenge personal jurisdiction in ... answers to the complaint and by motions for summary judgment or at trial’ ” and, if unsuccessful in all of these, pursuing an appeal. 128 So.3d at 722 (quoting Ex parte United Insurance Cos., 936 So.2d 1049, 1056 (Ala. 2006)). Although the dissent cites Ex parte United Insurance Cos. for the proposition that the petitioner can in fact continue to challenge personal jurisdiction in these ways, that case does not stand for the proposition that the right to do so in a case challenging in personam jurisdiction is an “adequate remedy” that justifies the refusal of the appellate court to hear a mandamus petition.
Indeed, the very reason for the limited exceptions we have carved out to the general rule that interlocutory denials of motions to dismiss and motions for a summary judgment cannot be reviewed by way of a petition for a writ of mandamus is that there are certain defenses (e.g., immunity, subject-matter jurisdiction, in personam jurisdiction, venue, and some statute-of-limitations defenses) that are of such a nature that a party simply ought not to be put to the expense and effort of litigation. The cases recognizing the availability of mandamus relief as to such matters are countless.[5] Further, we have not been asked to overrule any of these cases.
Nor do I believe we should consider overruling this precedent, even in a case in which we might be asked to do so. It *717 simply is not an “adequate remedy” — i.e., as stated in Ex parte L.S.B., a remedy “adequate to prevent undue injury” or, as Bailey states, a remedy “competent to afford relief upon the very subject of his application” — to say to a party that has no meaningful contact with the State of Alabama or who, under our precedents, is protected by sovereign immunity from even going through litigation much less from liability that he or she must simply “further litigate” the case and one day take an appeal. In a given case, such an approach could subject a defendant to years of litigation, hundreds of thousands of dollars in attorney fees and other litigation expenses, the time, effort, and expense of traveling to Alabama from elsewhere in the country for depositions and hearings (in the case of the party with no contact with the State), and a cloud of uncertainty and worry hanging over the party’s business or personal affairs all this time. I cannot agree that further litigation and an eventual appeal serves as an “adequate remedy” that meets these “subjects.”
MAIN, J., concurs.
MOORE, Chief Justice (dissenting).
I respectfully dissent from the issuance of a writ of mandamus in this case for two reasons: (1) the contacts of Alamo Title Company with Alabama are sufficient to establish personal jurisdiction, and (2) Alamo’s failure to apply to the trial court for a permissive appeal violates a key requisite for mandamus: the absence of another adequate remedy, e.g., an appeal.
The threshold for issuing a writ of mandamus is high.
“Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.”
Ex parte Integon Corp., 672 So.2d 497, 499 (Ala.1995).
Granting Alamo’s petition for a writ of mandamus ignores Alamo’s wrongful conduct in transferring to Alabama funds Alamo knew were, by agreement, to be inter-pleaded into a court in Texas, a finding made by the trial court in denying Alamo’s motion to dismiss.
I. Clear Legal Right to Relief Sought
I begin with a look at certain undisputed facts omitted from the analysis in the majority opinion, facts that refute the picture of Alamo as a merely “accidental” defendant forced to defend a case in a distant state resulting from a single random contact.

A. Omitted Facts

The amended complaint states that on the day of the closing, October 27, 2011, the plaintiff, P.B. Surf, Ltd., and defendants Guy A. Savage and G.J. Willem Noltes agreed that Alamo “would inter-plead the net proceeds in Court in Texas so that the proper distribution of the net proceeds could be determined by a judge.” The amended complaint further states:
“All parties to the present dispute were in agreement with this proposed course of conduct and, as of the close of business on October 27, 2011, P.B. Surf had been informed and believed that the contemplated Texas interpleader would occur based on the parties’ agreement and written confirmation delivered to Alamo Title Company, coupled with Alamo’s consent to this arrangement and planned interpleader action.”
*718 Nonetheless, the day following the closing, without informing P.B. Surf, Alamo, at the request of Savage and Noltes, wired the closing funds of $2,277,057.08 to a bank account in Birmingham controlled by Alabama resident Savage on which Noltes was a co-signatory. Savage and Noltes then withdrew the funds from the Birmingham account and deposited them in accounts beyond the reach of P.B. Surf. According to the relevant operating agreement that bound P.B. Surf and certain entities controlled by Savage and Noltes, P.B. Surf was entitled to the proceeds of the sale.
On July 3, 2012, the trial court entered a consent judgment in favor of P.B. Surf and against defendant Savage, his wife Tamela Savage, and other related entities in the amount of $2.5 million. In entering the judgment, the court relied on oral testimony and evidence provided at hearings and on P.B. Surfs amended complaint.
Additional proceeds of the sale in the amount of $1,561,704.80 were under the control of Grandbridge Real Estate Capital, LLC. Savage and Noltes sought to convince Grandbridge to wire the funds it was holding to them also. The amended complaint states: “Grandbridge, however, refused to release the monies it held based on a simple phone call.” Instead it inter-pleaded the money into the registry of the United States District Court for the Northern District of Alabama.
Savage and Noltes did not copy P.B. Surf on any of their communications to Alamo. Despite having actual knowledge confirmed in writing that P.B. Surf claimed an interest in the sale proceeds it was holding, Alamo did not inform P.B. Surf of the communications from Savage and Noltes, but simply followed their email and telephone instructions to wire the money to an account at Wells Fargo in Birmingham controlled by Savage. P.B. Surf did not learn that the funds had been wired until two or three days later when its attorney contacted Alamo about the status of the Texas interpleader action. Savage and Noltes refused to return the proceeds of the sale, prompting this lawsuit.

B. Jurisdictional Analysis

1. Alamo’s alleged negligence

Alamo claims in its opening brief that it had no knowledge of the wrongdoing of Savage and Noltes and that it was merely an innocent intermediary in an “accidental or random” contact with an Alabama bank and that its act of “merely wiring money into an account in the forum state” is insufficient to support personal jurisdiction. But Alamo does concede that it “acknowledged and agreed ... to interplead the proceeds at issue.” By completely omitting from its analysis any mention of the October 27 understanding that Alamo would interplead the funds, the majority opinion portrays the wiring of the funds to Birmingham on October 28 as a simple, routine, and proper response to directions from Savage and Noltes, “who, as sellers, had the authority to instruct Alamo.” 128 So.3d at 713.
Other facts also militate against a ready acceptance of the portrayal in the majority opinion of Alamo’s role. The trial court has now entered a consent judgment against Savage for $2.5 million. Grand-bridge Real Estate Capital, the other real-estate-servicing agent in the sale, did in-terplead $1.5 million of the proceeds. These two acts support P.B. Surfs contention that Alamo’s disbursement of funds was not merely ministerial but at a minimum constituted negligence.
As the trial court stated in its order denying Alamo’s motion to dismiss, Alamo’s transfer of the sale proceeds was “in direct contravention and violation of the agreement of the parties made during the *719 closing.” Further, P.B. Surf “had made claim to the funds” directly to Alamo during the closing. Finally, Alamo was “on notice” of the competing claims, “which led to the agreement that the funds would be interpled into Court in Texas.”
Alamo’s wiring of the funds in violation of the agreement to interplead the funds and without any notice to P.B. Surf resulted, as the trial court found, in Savage and Noltes’s taking “substantial portions of the money so transferred for their own personal and business usages.” Under these facts found by the trial court, P.B. Surfs negligence claim against Alamo had prima facie validity.[6] In its amended complaint P.B. Surf alleged that Alamo “owed a duty of reasonable care to P.B. Surf when disbursing the proceeds from the San Paloma sale, especially given the notice the Defendants, including Alamo Title Company, received of P.B. Surfs claim to the disputed funds.” As P.B. Surf also alleged:
“Defendants breached the duty owed to P.B. Surf when it recklessly, carelessly, negligently, and/or wantonly distributed the proceeds from the San Paloma sale at Noltes’ and Savage’s instruction, without notice to P.B. Surf or its representative, despite being on notice that the proper distribution of the funds was in dispute.”
Under applicable law, the trial court properly exercised jurisdiction over Alamo to answer for its alleged negligence.

Applicable law

a. Assessing the allegations

The plaintiff has the burden of proving that the trial court has personal jurisdiction over the defendant. Ex parte Coving-ton Pike Dodge, Inc., 904 So.2d 226, 229 (Ala.2004). When considering a Rule 12(b)(2), Ala. R. Civ. P., motion to dismiss for want of personal jurisdiction, “ ‘ “a court must consider as true the allegations of the plaintiffs complaint not controverted by the defendant’s affidavits, and ‘where the plaintiffs complaint and the defendant’s affidavits conflict, the ... court must construe all reasonable inferences in favor of the plaintiff.’ ” ’ ” Id. (quoting Wenger Tree Serv. v. Royal Truck & Equip., Inc., 853 So.2d 888, 894 (Ala.2002) (quoting other cases)).
To contradict P.B. Surfs amended complaint, Alamo supplied the affidavit of its co-general counsel David Pitschmann. The affidavit explained in detail that prior to the wiring of the funds in this matter, Alamo had no contact whatsoever with the State of Alabama. Further, Alamo “played no role in the division of the proceeds”; it transferred the proceeds “to the proper entity at the proper bank account”; and it “properly followed Savage and Noltes’ instructions on the morning of October 28, 2011, which it was specifically authorized to do.” These latter statements contradict the complaint, which alleges that Alamo transferred the funds in violation of the agreement to interplead the funds and without notice to the other seller claiming a right to the funds.
Insofar as the complaint and Pitsch-mann’s affidavit conflict, the court “ ‘ “ ‘must construe all reasonable inferences in favor of the plaintiff.’ ” ’ ” Cov-ington Pike Dodge, 904 So.2d at 229 (quoting Wenger Tree Serv., 853 So.2d at 894). P.B. Surfs amended complaint adequately pleaded negligence, a reasonable inference from Alamo’s actions. The trial court was not in error in construing the conflict between the complaint and Alamo’s affidavit *720 in favor of P.B. Surf. Further, by omitting from its affidavit all mention of the inter-pleader agreement, Alamo conceded the correctness of P.B. Surfs allegations on this point for purposes of the motion to dismiss. “ ‘[A] court must consider as true the allegations of the plaintiffs complaint not controverted by the defendant’s affidavits.’” Id.[7]
By omitting salient facts regarding the agreement to interplead the funds, the majority opinion improperly weighted the analysis in favor of Alamo.

b. Personal-jurisdiction law

Alabama’s long-arm rule extends as far as the federal Due Process Clause permits. Rule 4.2(b), Ala. R. Civ. P. Under federal precedent, a single tortious act in the forum state can subject an out-of-state defendant to personal jurisdiction. “So long as it creates a ‘substantial connection’ with the forum, even a single act can support jurisdiction.” Burger King Corp. v. Rud-zewicz, 471 U.S. 462, 475 n. 18, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). “The ‘substantial connection’ between the defendant and the forum State necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State.” Asahi Metal Indus. Co. v. Superior Court of California, 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (plurality opinion) (citation omitted). The negligent or wanton wiring of $2.2 million in closing proceeds to a Birmingham bank account controlled by an Alabama resident, who then withdraws the funds to the detriment of a legitimate claimant, is an action purposefully directed toward Alabama. In McGee v. International Life Insurance Co., 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), the Court found that execution of a single contract with an instate resident sufficed to permit jurisdiction over an out-of-state insurance company. The trial court reasonably construed the actions of Alamo in this matter as creating a substantial connection with Alabama. As the trial court stated: “But for the uncontroverted acts of Alamo, these parties would not be before this Court today.”
An out-of-state defendant’s acts must also be such that the defendant could reasonably foresee being held accountable in the courts of the forum state. WorldWide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Knowing of the agreement to interplead the closing proceeds and then deliberately wiring those funds to Alabama rather than into the designated Texas court, Alamo should have been aware that P.B. Surf could well challenge its action in the venue to which the proceeds were sent. “Crucial to the analysis is the element of foreseeability of the consequences of the defendant’s activities. There must be a clear, firm nexus between the acts of the defendant and the consequences complained of in order to establish the necessary contacts.” Duke v. Young, 496 So.2d 37, 39 (Ala.1986). That nexus exists here.
Whether personal jurisdiction exists is a fact-specific inquiry. A defendant who engages in tortious activity within this State should not be able to claim a jurisdictional bar to avoid liability. “We cannot allow a *721 culpable defendant to manipulate our decisions on in personam due process to effect a shield against his improper conduct.” Shrout v. Thorsen, 470 So.2d 1222, 1225 (Ala.1985). Although the merits of P.B. Surfs claim against Alamo were not adjudicated below, the unrebutted allegations of wrongdoing and the reasonable inferences arising from conflicting facts are sufficient to support jurisdiction on a motion to dismiss.
Because the trial court reasonably assumed jurisdiction, Alamo had no clear legal right to an order of dismissal, and the petition should be denied.
II. Other Adequate Remedy
Apart from the merits of P.B. Surfs jurisdictional arguments, mandamus relief is inappropriate here because Alamo has adequate alternative remedies. “A writ of mandamus will issue only in situations where other relief is unavailable or is inadequate, and it cannot be used as a substitute for appeal.” Ex parte Empire Fire & Marine Ins. Co., 720 So.2d 893, 894 (Ala. 1998).

A. Permissive Interlocutory Appeal

Because the amount in controversy exceeded $50,000, Alamo had available the alternative of seeking certification from the trial court for a permissive appeal.[8] Such an appeal has a far lower threshold of review. Rather than having to demonstrate a “clear legal right,” the proposed appellant, apart from urging the efficiency of an immediate appeal, need only allege the existence of “a controlling question of law as to which there is substantial ground for difference of opinion.” Rule 5(a), Ala. R.App. P. In this case, the controlling question of law would be whether, upon application of the minimum-contacts analysis, the trial court has personal jurisdiction over Alamo.
Because Rule 5, Ala. R.App. P., is a specific limited alternative to attacking an interlocutory order by a petition for a writ of mandamus, it should logically, when other requirements for an appeal are met,[9] be a prerequisite to seeking mandamus relief. See Crawford v. Springle, 631 So.2d 880, 882 (Ala.1993) (“Where statutes in pari materia are general and specific, the more specific statute controls the more general statute.”); Ex parte Ward, 89 So.3d 720, 727 (Ala.2011) (‘“When construing rules, this Court has applied the rules of construction applicable to statutes. Ex parte State ex rel. Daw, 786 So.2d 1134, 1136 (Ala.2000).”). Both Rule 5 (permissive appeal) and Rule 21, Ala. R.App. P. (applications for mandamus and other extraordinary writs), provide means for appellate review of an interlocutory order. “Statutes should be construed together so as to harmonize the provisions as far as practical.” Ex parte Jones Mfg. Co., 589 So.2d 208, 211 (Ala.1991). Thus, Rule 5 and Rule 21 should be construed to harmonize their application, the specific rule (permissive appeal) taking priority, where available, over the general remedy of mandamus.
Additionally, such an approach will promote harmony and efficiency within the judicial system. By requiring a party to initially resort to Rule 5, this Court will *722 demonstrate its respect for the jurisdiction of the trial courts, reserving the extraordinary remedy of mandamus for truly extraordinary situations. When the ordinary remedy of permissive appeal is accessible, the extraordinary remedy of mandamus should abate.

B. Further Litigation in the Trial Court

Denial of Alamo’s motion to dismiss does not limit its capacity to further challenge jurisdiction pretrial or during trial. “[T]he trial court’s denial of the petitioners’ motions to dismiss for lack of personal jurisdiction is interlocutory and preliminary only. The petitioners can continue to challenge personal jurisdiction in their answers to the complaint and by motions for a summary judgment or at trial.” Ex parte United Ins. Cos., 936 So.2d 1049, 1056 (AJa.2006). Alamo thus also had the alternative remedy of continuing to litigate the personal-jurisdiction issue in the trial court. If it were successful on the merits, the issue would be moot. Otherwise, absence of personal jurisdiction could be grounds for an appeal from an adverse final judgment.
III. Conclusion
Alamo lacked a clear legal right to the relief sought and also had other alternative avenues for relief by way of an appeal. Therefore, I respectfully dissent from the Court’s issuance of a writ of mandamus reversing the trial court’s order.

. In Ex parte Liberty National Life Insurance Co., 825 So.2d 758 (Ala.2002), only three of the eight sitting Justices agreed that mandamus would lie to direct a trial court to certify a legal question for interlocutory review when the trial court had refused to do so. Two Justices, Johnstone and Harwood (the author of Ex parte Showers, 812 So.2d 277 (Ala. 2001), upon which the three Justices in the plurality relied) wrote separately to explain that a Rule 5 certification was entirely discretionary "in the opinion of the judge” and that an appellate court simply could not force a trial court judge to hold any certain opinion. If Justices Johnstone and Harwood have correctly assessed the wording in Rule 5, there is no right to an interlocutory appeal, and, therefore, a party aggrieved by some interlocutory order of the trial court has no ability to seek an interlocutory appeal no matter how unreasonable the trial judge’s refusal to certify the question.

. Among the many dozens upon dozens of cases that could be cited for the availability of mandamus relief in such cases are the two referenced by the majority opinion: Ex parte McNeese Title, LLC, 82 So.3d 670, 673 (Ala. 2011), which quotes Ex parte Dill, Dill, Carr, Stonbraker & Hutchings, P.C., 866 So.2d 519, 525 (Ala.2003), for the principle that " 'a petition for writ of mandamus is a proper device by which to challenge the denial of a motion to dismiss for lack of in personam jurisdiction.' "

. P.B. Surf’s amended complaint also alleged conspiracy against Alamo. Because the trial court found jurisdiction without reference to the conspiracy allegations, the consideration of those allegations is not essential to this analysis.

. Because the trial court found in P.B. Surf's favor, it did not address P.B. Surf’s request for jurisdictional discovery on the relationship between Alamo, Savage, and Noltes. Because this Court has found that the record as it currently exists does not support jurisdiction over Alamo, it should merely remand for P.B. Surf to conduct jurisdictional discovery rather than issuing the writ outright. "[C]ourts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.’ ” Ex parte Buflcin, 936 So.2d 1042, 1048 (Ala.2006) (citations and some internal quotation marks omitted).

. "A party may request permission to appeal from an interlocutory order in civil actions .... Appeals of interlocutory orders are limited to those civil cases that are within the original appellate jurisdiction of the Supreme Court.” Rule 5(a), Ala. R.App. P. All civil cases in which the amount claimed exceeds $50,000 fall within this category. See §§ 12-2-7(1) and 12-3-10, Ala.Code 1975.

. E.g., when the amount in controversy exceeds the jurisdictional amount. See supra note 8.