The general issues of this appeal are: whether the trial court erred in denying defendants' motion for new trial on the ground that the verdict returned by the jury for the plaintiffs was contrary to the evidence in that it was in a sum less than the evidence showed; whether the trial court properly had inpersonam jurisdiction over certain nonresident defendants; and whether the trial court erred in refusing to give specific jury instructions requested by the defendants. We affirm.
Alabama Waterproofing was organized in 1961 in Birmingham, by R.H. Harden, Max Harden, John Harden and Marie Harden Hanby and was later incorporated in 1966 as an Alabama corporation with its principal place of business being Birmingham. In June, 1976 the company offices were moved to Jackson, Mississippi. Alabama Waterproofing's business is pressure grouting, a procedure used in general construction work to stabilize the ground upon which a foundation is to be laid.
Until August, 1975, the stock of Alabama Waterproofing was owned in equal shares by R.H. Harden, Max Harden, John Harden, and Marie Harden Hanby. They also served as directors, officers and managers of the company.
In August, 1975, three of the shareholders, Max Harden, Marie Harden Hanby and John Harden, plaintiffs below, sold their stock in Alabama Waterproofing to Kelly Childress, T.N. Brooks, Norman Brooks, Jr., and W.L. Hudson, four of the named defendants in the case at bar. R.H. Harden did not sell his stock. Alberta Dean Harden, as executrix, represented the Estate of John Harden who died following the sale.
Pursuant to the terms of the contract in connection with the stock sale, Max Harden, Marie Hanby and John Harden were to receive an initial cash payment of $50,000 from the stock purchase, and Alabama Waterproofing was to execute certain agreements entitled, "Agreement Not to Compete." These agreements executed on August 11, 1975, provided in essence that:
 1. Alabama Waterproofing would pay each stock seller the sum of $600,000 over a fifteen year period at a rate of $40,000 each year in weekly installments.
 2. Alabama Waterproofing would furnish each seller health insurance, life insurance, a company automobile liability insurance and expenses for travel and fuel; and
 3. Reimbursement for all attorneys' fees incurred by the sellers in enforcing the agreement in the event of default by Alabama Waterproofing.
The stock sellers also required, by the terms of the agreement, that the four stock purchasers, Kelly Childress, T.N. Brooks, Norman Brooks, Jr., and W.L. Hudson, and their wives, and R.H. Harden and his wife, Bebe Harden, sign a guaranty agreement guaranteeing the performance by the corporation of the "Agreement Not to Compete." The facts indicate that all the documents executed in connection with the sale of the company were executed in Alabama except that Mrs. W.L. Hudson, Mrs. Norman Brooks, Jr., and Mrs. T.N. Brooks, signed the guaranty agreements in Mississippi, their state of residence.
The corporate directorships and offices held by Max Harden, Marie Harden Hanby and John Harden in Alabama Waterproofing were relinquished at a special joint meeting of the stockholders and directors of the corporation held in Birmingham on August 16, 1975. *Page 143 
The plaintiffs initially filed their complaint in the Circuit Court of Jefferson County, on May 12, 1978, but upon motion of the defendants to transfer the case to Baldwin County, Judge William A. Thompson, on June 11, 1979, entered an order granting the resident defendants' motion to transfer, but concurrently denied nonresident defendants' motion to dismiss for lack of jurisdiction. Prior to the trial, defendant Bebe Harden was dismissed with prejudice from the action.
In answer to the amended complaint, defendants admitted the execution of the agreements and disputed none of the terms of the agreements that form the basis of the plaintiffs' suit; however, they pleaded several defenses to the formation of the agreements including: fraudulent representation and concealment by the sellers; impossibility of performance; failure of consideration; violation of certain provisions of the Securities Act of Alabama; and the execution and delivery of the contracts of guaranty on Sunday. The defendants also asserted counterclaims against the plaintiffs in which they claimed the breach of fiduciary duties by plaintiffs as corporate directors; false representation and concealment and fraud. Violations of the Alabama Securities Act were raised in an amended counterclaim filed shortly before trial.
Following the trial, a jury verdict was returned for plaintiffs against the defendants in which the jury fixed damages for each plaintiff in the sum of $300,000 or a total of $900,000, plus interest, at a rate of 6% per annum from September 1977, as well as attorney's fees in the amount of $135,000. The defendants filed a motion for new trial on several grounds. This motion was denied by the trial court on September 16, 1981, whereupon the defendants appealed, raising the three issues set out above.
 I
The appellants (stock purchasers) assert that the verdict ought to be set aside and a new trial ordered because the verdict cannot be justified on any reasonable hypothesis presented by the evidence. The primary cases cited are Holcombe Bowden v. Reynolds, 200 Ala. 190, 74 So. 938 (1917), andDonavan v. Fandrich, 265 Ala. 439, 440, 92 So.2d 1, 2 (1957). They claim that based on the undisputed evidence and the jury's finding of the issues in favor of the stock sellers, the minimum amount necessary to restore each seller to the statusquo, excluding the insurance and automobile benefits, would have been $514,000 and not the $300,000 amount fixed by the jury.
They argue, in brief:
 "When the issue is contract, or no contract, and the jury finds the contract to exist, which by its terms definitely, specifically and unalterably fixed the amount of damages due for the breach thereof, a verdict of the jury that cannot be justified upon any reasonable hypothesis presented by the evidence ought to be set aside or a motion for new trial granted, and it is no adequate answer to say that a judgment for a larger amount might have been justified as a legal possibility. [Emphasis added.] Donavan v. Fandrich, 265 Ala. 439, 92 So.2d 1 (1957); Holcombe Bowden v. Reynolds, 200 Ala. 190, 75 So. 938 (1917); Winn Cigar Company v. Wilson, 35 Ala. App. 466, 48 So.2d 64 (1950); Metropolitan Life Ins. v. Ray, 28 Ala. App. 357, 184 So. 282 (1938); accord, Thompson v. Shelton, 277 Ala. 148, 167 So.2d 715 (1964)."
The stock sellers, even though they prayed for the award of damages in excess of $300,000 each, contend that they were barred from competing in business with Alabama Waterproofing Company, and that when Alabama Waterproofing repudiated the contract, they were freed from this obligation. They also claim that there were "bilateral contracts which neither side fully performed." Hence, they say that the amount of damages and the breach were in dispute and consequently the jury was free to award them less than what they asked for.
We agree with the sellers that the amount of damages to which the sellers were entitled, in view of the other issues *Page 144 
involved, was not so clear from the evidence that the jury verdict was inadequate.
The general rule as to a jury's award of damages is long settled and firmly established:
 "Assessment of damages is left largely to the discretion of the jury, in the first instance, and to the discretion of the trial judge on motion for new trial. A jury's award of damages will not be disturbed unless it is so excessive [or inadequate] as to indicate passion, prejudice, corruption, or mistake. When the trial court has refused to disturb a verdict because of the amount recovered, a reviewing court is reluctant to substitute its judgment for that of the jury and the trial court."
Rosen v. Lawson, 281 Ala. 351, 356, 202 So.2d 716, 720 (1967); and cases cited therein. See Stinson v. Acme Propane Gas Co.,391 So.2d 659, 661 (Ala. 1980); Jackson v. Roddy, 224 Ala. 132,133, 139 So. 354, 355 (1932); See generally 5A C.J.S. Appealand Error §§ 1650 and 1652 (1958). Under the facts of this case, we hold that the party against whom the verdict for money damages was rendered cannot complain of its inadequacy. SeeStokely v. Bessemer Coal, Iron Land Co., 202 Ala. 576, 577,81 So. 78, 79 (1918); See generally Annot., 31 A.L.R. 1091 (1924). Furthermore, after reviewing the facts of this case, we do not believe the amount of damages awarded in this case indicates "passion, prejudice, corruption or mistake" on the part of the jury; therefore, we find there was evidence upon which the jury verdict could be sustained.
 II
With regard to the second issue on appeal, appellants assert that although Mrs. W.L. Hudson, Mrs. Norman Brooks, Jr., and Mrs. T.N. Brooks are guarantors of the "Agreement Not to Compete," the guaranty contract was signed by them in the state of Mississippi and they were and have been at all times during the negotiations and trial, residents of the state of Mississippi. Appellants maintain, therefore, that these individuals lacked the minimum contacts with the State of Alabama necessary for in personam jurisdiction.
The Due Process Clause of the Fourteenth Amendment limits the power of a state court to render a valid personal judgment against a nonresident defendant. Kulko v. Superior Court ofCalifornia, 436 U.S. 84, 91, 98 S.Ct. 1690, 1696,56 L.Ed.2d 132 (1978). Under Alabama's long-arm procedure, Rule 4.2, ARCP, as interpreted by Court decisions, an Alabama court may acquirein personam jurisdiction over a nonresident defendant if the defendant has sufficient "minimum contacts" so that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." International Shoe Co. v.Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95
(1945); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286,290, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980); Bryant v. CeatS.p.A., 406 So.2d 376, 377 (Ala. 1981), cert. denied,456 U.S. 944, 102 S.Ct. 2008, 72 L.Ed.2d 466 (1982).
The appellants cite two cases from different jurisdictions for the proposition that merely executing an instrument outside the forum is insufficient to authorize the exercise of inpersonam jurisdiction. In State ex rel. Sweere v. Crookham,289 Or. 3, 609 P.2d 361 (1980), the Oregon Supreme Court did hold that a guaranty agreement signed in another state was not sufficient for the plaintiff to obtain jurisdiction over an individual defendant who, as an employee of the corporate defendant, executed a personal guaranty but had not otherwise had any contact with the State of Oregon.[1] The reluctance of the Oregon Supreme Court to uphold the assertion of jurisdiction by an Oregon court "over a nonresident who never set foot in Oregon," was premised on the provision of Oregon's long-arm statute[2] which establishes that Oregon courts have *Page 145 
jurisdiction over any nonresident as to "any cause of action or suit or proceeding arising from . . . the transaction of any business within this state. . . ." Consequently, the court concluded that the guarantor's "extra-territorial contracts caused no important business consequences." 289 Or. at 6,609 P.2d at 364. Likewise, in All Lease Company v. Betts, 294 Minn. 473, 199 N.W.2d 821 (1972), the Minnesota Supreme Court did hold that the actions of the two nonresident defendants, one who executed a lease in Florida and the other who executed a guaranty in Pennsylvania, were insufficient to authorize personal jurisdiction under the terms of Minn.Stat. § 543.19,[3]
because those acts did not demonstrate minimum contacts with Minnesota, 294 Minn. at 474, 199 N.W.2d at 822. But cf. UnionInvestments v. Fisco, Inc., 137 N.J. Super. 395, 398,349 A.2d 117 (1975) (A Pennsylvania corporation was subject to suit in New Jersey on its guaranty of a lease, executed in Pennsylvania, between a New Jersey landlord and a defendant's wholly owned subsidiary leasing a New Jersey building. The execution of the guaranty was also determined the precondition to plaintiff's leasing the property to the defendant's subsidiary.); First Citizens Bank Trust Co. v. McDaniel,18 N.C. App. 644, 197 S.E.2d 556 (1973) (A New Jersey resident who endorsed a corporate borrower's promissory note payable for a loan from a North Carolina bank was subject to suit on the note in North Carolina.).
This state's long-arm procedure for service of process is not limited to rigid transactional categories. Instead, in personam
jurisdiction of an Alabama court under Rule 4.2 (a)(2), ARCP, is as broad as the permissible limits of due process. SeeDeSotacho, Inc. v. Valnit Industries, Inc., 350 So.2d 447 (Ala. 1977); Schoel v. Sikes Corp., 533 F.2d 930 (5th Cir. 1976). Seealso Rule 4.2, ARCP, Committee Comments.
In determining whether the nonresident appellants possessed sufficient contacts with this state for the trial court to obtain in personam jurisdiction, we must necessarily examine all the relevant facts and attendant circumstances of the case. J. Moore, 2 Moore's Federal Practice § 4.41-1[3] at 4-449.
The guaranty agreement which was signed by all of the appellants, including the non-resident appellants, stated as follows:
 "Guarantee of the performance of the above contract [the `agreement not to compete'] by the shareholders of Alabama Waterproofing Company, Inc., and their spouses: We, for $1.00 and other sufficient consideration, hereby guarantee the performance of the foregoing agreement."
While the "Agreement Not to Compete" was a contract between Alabama Waterproofing Company, Inc., and each of the appellees, the guaranty agreement was a separate contract signed by each appellant. Irrespective of the singular fact that the nonresident appellants actually signed the guaranty in Mississippi, the Court is of the opinion that the trial court could have found that the guaranty signed by each appellant was a significant aspect of the negotiations which occurred in Alabama and that it was foreseeable that appellants' transaction would have consequences in this state. See ChemicalBank v. World Hockey Ass'n, 403 F. Supp. 1374, 1379 (S.D.N Y 1975); see also Bond v. Montego Bay Dev. Corp., 405 F. Supp. 256,259 (W.D.Tenn. 1975). Furthermore, based on the facts as presented, it is quite evident that the trial *Page 146 
court could have found that the nonresident appellants had good reason to expect to be sued in an Alabama court in the event Alabama Waterproofing failed to fulfill its obligations to appellees. See Shaffer v. Heitner, 433 U.S. 186, 217,97 S.Ct. 2569, 2586, 53 L.Ed.2d 683 (1977); World-Wide Volkswagen Corp.v. Woodson, 444 U.S. 290, 297, 100 S.Ct. 559, 567,62 L.Ed.2d 490 (1980). In World-Wide Volkswagen Corp. v. Woodson, supra, the Supreme Court of the United States opined:
 "[T]he forseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there. See Kulko v. California Superior Court, supra, 436 U.S., at 97-98, 98 S.Ct., at 1699-1700; Shaffer v. Heitner, 433 U.S., at 216, 97 S.Ct., at 2586, and see id., at 217-219, 97 S.Ct., at 2586-2587
(Stevens, J., concurring in judgment). The Due Process Clause, by ensuring the `orderly administration of the laws,' International Shoe Co. v. Washington, 326 U.S., at 319, 66 S.Ct., at 159, gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit."
444 U.S., at 297, 100 S.Ct., at 567.
The Court finds that although the nonresident appellants signed the guaranty in Mississippi, nevertheless, the guaranty was negotiated in Alabama, the guaranty guaranteed the performance of an Alabama corporation, and the trial court's findings that it was reasonably foreseeable that if the guarantors breached their agreement they could reasonably anticipate being haled into an Alabama court are supported by the record on appeal. We hold that under these circumstances, it was fair and reasonable, so as to comport with due process, for the trial court to require the three nonresident defendants to defend this action in Alabama; therefore, the trial court properly dismissed the nonresident defendants' motions to dismiss the complaints against them for lack of personal jurisdiction.
 III
Appellants' last contention is that the trial court erred in refusing to give in its oral charge to the jury certain written, requested instructions which related to the Alabama Securities Act, specifically Code 1975, § 8-6-19. The trial court, while refusing to give these instructions, nevertheless charged the jury at appellants' written request, on the elements of fraud, misrepresentation and deceit. The trial court instructed the jury that appellees could not recover on their own claims, and would be liable on the appellants' counterclaims, if the jury found appellees' conduct was fraudulent or deceitful. We hold that the trial court's refusal to give the requested charges does not constitute error to reverse under the circumstances of this case, especially in view of the fact that the trial court instructed the jury thoroughly on the elements of fraud and deceit; therefore, we uphold the trial court's denial of a new trial on this ground.See Pinckard v. Abel, 200 Ala. 64, 65, 75 So. 392, 393 (1917); Rule 45, ARAP.
For the foregoing reasons, we affirm the judgment of the trial court.
AFFIRMED.
TORBERT, C.J., and JONES, ALMON and BEATTY, JJ., concur.
[1] The guaranty was executed for return of certain merchandise previously supplied to the corporation or for payment of the retained units.
[2] Or.Rev.Stat. § 14.035 (1)(a) (1979).
[3] Minn.St. 543.19 provides in part: "Subdivision 1. As to a cause of action arising from any acts enumerated in this subdivision, a court of this state with jurisdiction of the subject matter may exercise personal jurisdiction over * * * any nonresident individual * * * in the same manner as if * * * he were a resident of this state. This section applies if * * * the * * * nonresident individual:
"* * *
"(b) Transacts any business within the state, * * *
"* * *
"Subd. 3. Only causes of action arising from acts enumerated in subdivision 1 may be asserted against a defendant in an action in which jurisdiction over him is based upon this section."