This is an appeal from an order granting a motion to dismiss a third-party complaint as to six of eight third-party defendants. *Page 38 
The motion to dismiss was granted based on lack of in personam
jurisdiction. The case was appealed to this Court after an entry of final judgment pursuant to Rule 54 (b), A.R.Civ.P.
The issue is whether Alabama's long arm rule confers inpersonam jurisdiction over six non-resident directors of a Georgia corporation where the complaint alleges fraud.
For purposes of this appeal the facts as alleged by the third-party plaintiff will be considered in a light most favorable to him.
Third-party plaintiff, Wayne Duke, is an Alabama resident. He is the organizer of Southeastern Porcelain and Construction Company, Inc. (SPC). He owned and operated that company from its inception in 1962 until 1982.
In 1981 Duke was approached by an officer of a Birmingham bank, who inquired of Duke whether he was interested in selling SPC. Duke responded by providing the bank with SPC financial statements. Subsequently, the bank official introduced Duke to Paul Jones, Jr., and Samuel Jones, both Georgia residents and president and secretary, respectively, of Macon Prestressed Concrete Company (MPC). This meeting was initiated by the officers of MPC for the purpose of arranging a purchase of SPC by MPC. The meeting took place in Birmingham. Negotiations were carried on between Duke, in his capacity as an individual, and the Joneses, in their capacities as agents of MPC.
After a break in the negotiations, they were revived in February 1983, by Duke. The Joneses made additional trips to Birmingham to continue the negotiations on behalf of MPC. An agreement was reached whereby Duke would sell his stock in SPC to MPC for $2,000,000, of which $250,000 was to be paid at the closing with the balance to be paid in annual installments over an eight-year period. The stock certificates of SPC were to be held by a third party as security for the unpaid balance of the note. The sale was executed as agreed and MPC began making monthly interest payments. These interest payments were discontinued by MPC after December 1983. No principal installments were ever paid.
On July 17, 1984, Paul Jones, Jr., as agent for MPC, communicated to Duke that if Duke refused to defer some of the installments MPC would be placed in a bankruptcy situation. Also by this communication Duke was informed for the first time that the acquisition of SPC was highly leveraged from the beginning and that it was the intent all along that payments would be made from the profits projected for SPC. At a subsequent meeting in Atlanta between Duke and two of the other MPC board members, Robert Young and Andrew Young, it was confirmed that the board of directors of MPC had intended from the beginning that the payment of the installment note be limited to dividends received by MPC from SPC.
On August 21, 1984, an action was initiated by Duke to foreclose on the SPC stock, which had been pledged as security for the installment note. On August 24, 1984, MPC filed for bankruptcy under Chapter 11 of the Federal Bankruptcy Act, thus staying the foreclosure proceeding initiated by Duke. On December 6, 1984, the assets of SPC were sold at auction and the proceeds applied to a loan which SPC had taken out subsequent to its takeover by MPC. Also, on December 6 an action was brought by SPC against Duke; Duke responded in March 1985 with the third-party complaint that resulted in this appeal.
Duke alleges that all eight of the directors of MPC acted in concert to conceal from Duke their scheme to limit the payoff of the note to dividends received by MPC out of the earnings of SPC. Duke further alleges that by reasons of the particular circumstances of their relationship, the third-party defendants were under an obligation to communicate to Duke this limitation as to the source for repayment of the note. In short, Duke charges the directors of MPC with fraudulent concealment of a material fact with the intent to induce him to contract and charges that he relied on their misrepresentation to his detriment. *Page 39 
The third-party defendants filed a motion to dismiss based on (1) a failure to state a claim upon which relief can be granted and (2) lack of in personam jurisdiction. The circuit court denied the motion as to Paul Jones, Jr., and Samuel Jones, but granted the motion as to the remaining six directors of MPC. The circuit court's denial of the motion as to two of the eight directors of MPC implicitly recognizes that Duke's third-party complaint states a claim of fraudulent concealment sufficient to withstand a Rule 12 (b)(6), A.R.Civ.P., motion to dismiss for failure to state a claim on which relief can be granted. Briefs of both the appellant and the appellees discuss only the issue of in personam jurisdiction as to the six parties dismissed. They do not make an issue of the first ground stated in their motion, failure to state a claim. Therefore, we will address only the issue of in personam jurisdiction as to the remaining six directors of MPC.
The reach of Rule 4.2, A.R.Civ.P., Alabama's equivalent to a long arm statute, has been held to extend to the limits permitted by due process. Alabama Waterproofing Co. v. Hanby,431 So.2d 141, 145 (Ala. 1983).
The focal point of the analysis is the alleged "contacts" which a defendant has with the forum state. Courts look to "the relationship among the defendant, the forum, and the litigation." Shaffer v. Heitner, 433 U.S. 186, 204,97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977). Much emphasis has been placed on the physical presence of the defendant within the forum state. Frequently, the decisions of the courts have turned on this one point. Yet such a presence or absence from the forum state is not the foundation upon which a determination is made. Physical presence merely provides strong, objective evidence of sufficient contacts. The fundamental question is, did the defendant act in such a manner that he reasonably ought to anticipate the direct consequences of his actions to be felt by another person residing in another state?
This same point was established by the United States Supreme Court in Calder v. Jones, 465 U.S. 783, 104 S.Ct. 1482,79 L.Ed.2d 804 (1984). There the plaintiff was a resident of California. The defendants were residents of Florida. The defendants were employed as a writer and as an editor for National Enquirer, Inc., a Florida corporation having its principal place of business in Florida. The defendants were alleged to have authored and edited an article injurious to plaintiff, that article having been disseminated in, among other places, California. The Court did not find it necessary to look for physical contacts between the defendants and the forum state. It was the nature of the defendant's activities rather than the place of their occurrence that the Court considered: "[P]etitioners are not charged with mere untargeted negligence. Rather, their intentional, and allegedly tortious, actions were expressly aimed at California. . . . [T]hey knew [the article] would have a potentially devasting impact upon respondent. And they knew that the brunt of that injury would be felt by respondent in the State in which she lives. . . ."Id., 465 U.S. at 789-90, 104 S.Ct. at 1487, 79 L.Ed.2d at 812.
Crucial to the analysis is the element of foreseeability of the consequences of the defendant's activities. There must be a clear, firm nexis between the acts of the defendant and the consequences complained of in order to establish the necessary contacts. Explicitly approving the "effects" tests[1] employed by the California court, the Supreme Court concluded, "[P]etitioners are primary participants in an alleged wrongdoing intentionally directed at a California resident, and jurisdiction over them is proper on that basis." Id.,465 U.S. at 790, 104 S.Ct. at 1487, 79 L.Ed.2d at 813.
In a case reviewing an action in which the defendant was found guilty of conspiracy to defraud, this Court upheld the lower *Page 40 
court's finding of in personam jurisdiction. That case, Shroutv. Thoren, 470 So.2d 1222 (Ala. 1985), is factually similar to the one now before the Court. It involved meetings between the plaintiff, Thorsen, and the defendant, Shrout, and other co-conspirators in partnership with Shrout. These meetings took place outside the State of Alabama. Additional contacts between Shrout and Thorsen were limited to telephone conversations and a letter hand-delivered to Thorsen by an associate of Shrout's. At no time was Shrout ever present in Alabama. Recognizing that a proper analysis of the limits of due process "must consider the particular facts and circumstances of this [the] case" and that physical presence in the state is not a prerequisite, id., at 1224, this Court emphasized the integral part that Shrout played in the scheme. He had acted aggressively to further a plan which specifically contemplated the injury of an Alabama resident. We stated then "We cannot allow a culpable defendant to manipulate our decisions on in personam due process to effect a shield against his improper conduct." Id., at 1225.
Appellees in their brief attempt to make a defense out of their status as agents of MPC acting entirely within the scope of their employment. Their status as agents of MPC is not relevant in this case. First, as demonstrated by the facts and holding in Calder, an individual is not shielded from liability simply because his acts were done in furtherance of his employer's interest. In fact, the Court stated there that the defendants' "status as employees does not somehow insulate them from jurisdiction." Calder, supra, 465 U.S. at 790,104 S.Ct. at 1487.
Second, the allegations of fraud contemplated that the defendants were acting outside the scope of their employment. Given the nature of the claim, it is not hard to envision how the acts of the other six directors were "a significant aspect of the negotiations which occurred in Alabama and that it was foreseeable that appellants' [here, appellees'] transaction would have consequences in this state." Alabama WaterproofingCo. v. Hanby, 431 So.2d 141, 145 (Ala. 1983). The alleged fraudulent scheme may have been propounded, implemented, and directed by one or all of these six parties.
Appellees specifically cite us to Thames v. Gunter-Dunn,Inc., 373 So.2d 640 (Ala. 1979), Brooks v. Inlow, 453 So.2d 349
(Ala. 1984), and Pierce v. Heyman, 480 So.2d 1185 (Ala. 1985). These cases can be distinguished on their facts. In each instance the tortious act complained of was exactly what Calder
referred to as "mere untargeted negligence." The thrust of Duke's allegations is that all eight directors of MPC conspired to fraudulently conceal a material fact during the negotiations with Duke. This is certainly not an example of mere untargeted negligence. The defendants' "intentional, and allegedly tortious, actions were expressly aimed at" Alabama. Calder,supra, 465 U.S. at 789, 104 S.Ct. at 1487, 79 L.Ed.2d at 813.
Appellees argue the weakness of Duke's allegations. As already mentioned, appellees do not raise as an issue the lower court's apparent denial of their motion to dismiss for failure to state a claim. Therefore, this portion of their argument is not relevant to the issue before this Court.
Appellees also argue that jurisdiction cannot be based on a "bare allegation of fraud." They cite Williams v. Bedenbaugh,215 Ala. 200, 110 So. 286 (1926), and Rule 9 (b), A.R.Civ.P. Neither Williams nor 9 (b) deals with the question of inpersonam jurisdiction. Rather, they deal with the requirements of pleading. Whether Duke's complaint meets the particularity requirements of 9 (b) is not an issue before this Court.
For the foregoing reasons, the judgment of the trial court is hereby reversed and the cause is remanded.
REVERSED AND REMANDED.
MADDOX, JONES, ADAMS, HOUSTON and STEAGALL, JJ., concur.
[1] For an application of the "effects" test in an Alabama case, see Alabama Waterproofing Co. v. Hanby, 431 So.2d 141 (Ala. 1980). (The Court uses the term "consequences" to arrive at a result which is the same as that achieved in Calder.) *Page 41