On December 3, 2003, Bennie Ford was working for McKenzie Brothers Construction Company, Inc. ("McKenzie"), when he was allegedly injured in the line and scope of his employment. At the time of his alleged injury, Ford, who is a resident of Mississippi, was working for McKenzie in Choctaw County, Alabama, laying concrete block at a school construction site. McKenzie is a Mississippi company and is a member of the Builders and Contractors Association of Mississippi Self-Insurer's Fund ("BCAM"). BCAM is a workers' compensation self-insured fund that was created under the Mississippi Workers' Compensation Act and the regulations governing the Mississippi Workers' Compensation Commission. Pursuant to the coverage agreement between BCAM and McKenzie, BCAM is responsible for the payment of any Mississippi workers' compensation benefits due from McKenzie to an injured worker. BCAM paid Ford workers' compensation benefits until May 13, 2004.
Ford sued McKenzie in the Choctaw Circuit Court seeking Alabama workers' compensation benefits. He later amended his complaint to add BCAM as a defendant. BCAM filed a motion to dismiss, in which it argued that the circuit court lacked personal jurisdiction over it, that Ford could not maintain a direct action against it as McKenzie's insurance carrier, and that Ford had failed to state a claim against BCAM for which relief could be granted because, it asserted, BCAM was obligated to pay only Mississippi workers' compensation benefits and not Alabama workers' compensation benefits. BCAM attached to that motion a copy of the coverage agreement between it and McKenzie and the affidavit of Marty Milstead, the chief executive officer of BCAM, in which he stated that BCAM insured only Mississippi companies located in and doing business in Mississippi, that all claims made are processed in Mississippi, that BCAM never solicited businesses located in or doing business in the State of Alabama, and that BCAM does not maintain any offices or do any business in the State of Alabama. After considering Ford's response to the motion, the trial court denied BCAM's motion to dismiss without a hearing on March 30, 2006.
On June 23, 2006, BCAM moved for a summary judgment, arguing that Ford was not entitled to recover Alabama workers' compensation benefits from BCAM based on the plain language of the coverage agreement between BCAM and McKenzie requiring BCAM to pay only Mississippi workers' compensation benefits. In addition, the motion for a summary judgment incorporated the arguments made in BCAM's motion to dismiss. BCAM later supplemented its motion for a summary judgment, furthering its argument that BCAM was authorized and required to pay only Mississippi workers' compensation benefits; the supplemental motion was supported by the affidavits of Ron Riggan, the executive vice president of Amfed Companies, LLC, which is the service company for BCAM, and the affidavit of Preston C. Williams, the Self-Insurance Director for the Mississippi Workers' Compensation Commission. Riggan's affidavit authenticated several documents, including McKenzie's original application for participation in BCAM; the Mississippi Workers' Compensation Self-Insurance Group Indemnity Agreement, in which McKenzie agreed to be bound with *Page 1006 
other members of BCAM to pay obligations under the Mississippi Workers' Compensation Act; and the Workers' Compensation and Employers' Liability Certificate of Coverage information pages provided to McKenzie for each year from September 2001 to September 2004, which designate coverage for Mississippi workers' compensation only. Riggan also testified in his affidavit that BCAM provides coverage only for Mississippi workers' compensation benefits and that it does not and has never provided coverage for Alabama, or any other state's, workers' compensation benefits.
In response to BCAM's summary-judgment motion, Ford filed a brief in which he argued that he was entitled to file a direct action against BCAM because the coverage agreement between BCAM and McKenzie authorized such an action. Ford further argued that BCAM had informed Washington McKenzie, the owner of McKenzie, that it would provide insurance to cover McKenzie if it were sued in Alabama; Ford attached Washington McKenzie's affidavit to his response in opposition to BCAM's summary-judgment motion. In addition to Washington McKenzie's statement regarding BCAM's offer to insure McKenzie if it was sued in Alabama, Ford pointed out that the coverage agreement between BCAM and McKenzie indicated that coverage would apply if McKenzie was sued in a court located in the United States, its territories or possessions, or Canada. Ford's response was further supported by Ford's own affidavit, in which he stated that BCAM, had provided him worker's compensation benefits for his injury.
BCAM objected to and moved to strike Ford's response, which it said was sent to it via facsimile on March 14, 2007, at 4:48 p.m., the day before the scheduled hearing on BCAM's summary-judgment motion and less than the two days required by Rule 56(c)(2), Ala.R. Civ.P. The trial court denied BCAM's motion to strike. The trial court entered an order on April 2, 2007, denying BCAM's summary-judgment motion.
On May 14, 2007, BCAM filed its petition for a writ of mandamus, seeking to have this court order the trial court to dismiss Ford's claim against it on the bases that Ford could not bring a direct action against BCAM, that the trial court does not have personal jurisdiction over BCAM because it has no contacts with the State of Alabama sufficient to confer personal jurisdiction, and that the trial court abused its discretion by failing to strike Ford's response to BCAM's summary-judgment motion because it was filed less than two days before the summary-judgment hearing. For the reasons set out below, we grant the petition and issue the writ.
 "`[M]andamus is a drastic and extraordinary writ that will be issued only when there is: (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.' Ex parte Horton, 711 So.2d 979, 983 (Ala. 1998). `Subject to certain narrow exceptions . . ., the denial of a motion to dismiss or a motion for a summary judgment is not reviewable by petition for writ of mandamus.' Ex parte Liberty Nat'l Life Ins. Co., 825 So.2d 758, 761 (Ala. 2002) (citing Ex parte Jackson, 780 So.2d 681, 684 (Ala. 2000)). One of the exceptions is the denial of a motion grounded on a claim of lack of personal jurisdiction, Ex parte Sekeres, 646 So.2d 640 (Ala. 1994), Ex parte Paul Maclean Land Servs., 613 So.2d 1284 (Ala. 1993), and Ex parte *Page 1007 Volkswagenwerk Aktiengesellschaft, 443 So.2d 880 (Ala. 1983)."
Ex parte Alloy Wheels Int'l, Ltd., 882 So.2d 819, 821-22
(Ala. 2003).
A motion for a summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. A party moving for a summary judgment must make a prima facie showing "that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Rule 56(c)(3); see Lee v. City ofGadsden, 592 So.2d 1036, 1038 (Ala. 1992). If the movant meets this burden, "the burden then shifts to the nonmovant to rebut the movant's prima facie showing by `substantial evidence.'" Lee, 592 So.2d at 1038 (footnote omitted). "[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. ofFlorida, 547 So.2d 870, 871 (Ala. 1989); see
Ala. Code 1975, § 12-21-12(d). Furthermore, when reviewing a summary judgment, the appellate court must view all the evidence in a light most favorable to the nonmovant and must entertain all reasonable inferences from the evidence that a jury would be entitled to draw. See Nationwide Prop. Cas. Co. v. DPF Architects, P.C., 792 So.2d 369, 372
(Ala. 2000); and Fuqua v. Ingersoll-Rand Co.,591 So.2d 486, 487 (Ala. 1991).
"Jurisdiction of the Alabama courts extends to the permissible limits of due process under our long-arm rule, Rule 4.2, Ala. R. Civ. P." Steel Processors, Inc. v. Sue's Pumps, Inc.Rentals, 622 So.2d 910, 911 (Ala. 1993). Rule 4.2 provides, in pertinent part:
 "(b) Basis for Out-of-State Service. An appropriate basis exists for service of process outside of this state upon a person or entity in any action in this state when the person or entity has such contacts with this state that the prosecution of the action against the person or entity in this state is not inconsistent with the constitution of this state or the Constitution of the United States; or, the person or entity is sued in the capacity of guardian of a ward, or executor, administrator, or other personal representative of an estate, for the acts or omissions of a decedent or ward, and the person or entity so sued does not otherwise have sufficient contacts with this state in that capacity, but the decedent or ward would have been deemed to have sufficient contacts with this state if the action could have been maintained against the decedent or ward."
Thus, we turn to the consideration of whether BCAM has sufficient minimum contacts with the State of Alabama to permit it to be haled into court here without offending the traditional notions of fair play and substantial justice.See International Shoe Co. v. Washington,326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).
 "`A physical presence in Alabama is not a prerequisite to personal jurisdiction over a nonresident.' Sieber v. Campbell, 810 So.2d 641, 644 (Ala. 2001). What is required, however, is that the defendant have such contacts with Alabama that it `"should reasonably anticipate being haled into court [here]."' Dillon Equities v. Palmer Cay, Inc., 501 So.2d 459, 462
(Ala. 1986) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).
 "Depending on the quality and quantity of the contacts, jurisdiction may be either general or specific. Leventhal v. Harrelson, 723 So.2d 566, 569 (Ala. 1998). *Page 1008 
`General jurisdiction applies where a defendant's activities in the forum state are "substantial" or "continuous and systematic," regardless of whether those activities gave rise to the lawsuit. . . . A court has specific jurisdiction when a defendant has had few contacts with the forum state, but those contacts gave rise to the lawsuit.' Id.
 "But regardless of whether jurisdiction is alleged to be general or specific, the nexus between the defendant and the forum state must arise out of ` "an action of the defendant [that was] purposefully directed toward the forum State."' Elliott v. [Van Kleef], . . . 830 So.2d [726,] 731 [(Ala. 2002)] (quoting Asahi Metal Indus. Co. v. Superior Court of California, 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)). `This purposeful-availment requirement assures that a defendant will not be haled into a jurisdiction as a result of "`the unilateral activity of another person or a third person.'"' Elliott, 830 So.2d at 731 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528
(1985))."
Ex parte Dill, Dill, Carr, Stonbraker Hutchings,P.C., 866 So.2d 519, 525-26 (Ala. 2003).
Because Ford does not allege "substantial" or "continuous and systematic" contacts between BCAM and the State of Alabama, he seeks to establish specific in personam jurisdiction over BCAM. When considering whether there are sufficient contacts to establish specific jurisdiction, "[t]he focal point of the analysis is the alleged `contacts' which a defendant has with the forum state. Courts look to `the relationship among the defendant, the forum, and the litigation.' Shaffer v.Heitner, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579,53 L.Ed.2d 683 (1977)." Duke v. Young, 496 So.2d 37, 39
(Ala. 1986). As the Duke court explained, "[t]here must be a clear, firm [nexus] between the acts of the defendant and the consequences complained of in order to establish the necessary contacts." Duke, 496 So.2d at 39. As the federal courts have explained:
 "In order to find contacts sufficient for specific jurisdiction, the court should look to three factors: (1) the relationship between the contacts and the cause of action, (2) the degree to which the defendant `purposefully avail[ed] itself of the privilege of conducting activities within the forum,' and (3) the degree to which the defendant could `reasonably anticipate being haled into court' in the jurisdiction. [United States Sec. Exch. Comm'n v.] Carrillo, 115 F.3d [1540,] 1542 [(11th Cir. 1997)], quoting Vermeulen v. Renault, U.S.A., Inc., 985 F.2d 1534, 1546 (11th Cir. 1993)."
Portera v. Winn Dixie of Montgomery, Inc.,996 F.Supp. 1418, 1423-24 (M.D.Ala. 1998).
As noted above, BCAM presented affidavit testimony and documentary evidence that clearly indicated that BCAM contracted to provide only Mississippi workers' compensation benefits that McKenzie owed an employee because of an on-the-job injury. The affidavit testimony of Marty Milstead established that BCAM insured only Mississippi companies located in and doing business in Mississippi, that all claims made are processed in Mississippi, that BCAM never solicited businesses located in or doing business in the State of Alabama, and that BCAM does not maintain any offices or do any business in the State of Alabama. The Self-Insurer's Fund Workers' Compensation Coverage Agreement attached to Milstead's affidavit states in the section entitled "E. Location": "This agreement covers all of your work-places in the State of Mississippi unless you have insurance or are self-insured for *Page 1009 
such workplaces." The Mississippi Workers' Compensation Self-Insurance Group Indemnity Agreement attached to both Ron Riggan's affidavit and Preston Williams's affidavit clearly states that the agreement between the members of BCAM and BCAM "extends only to those liabilities incurred under the Workers' Compensation Law of the State of Mississippi." Thus, based on the evidence submitted by BCAM, it does not solicit business in Alabama and it does not offer coverage for Alabama workers' compensation benefits to its members. Nothing in B CAM's evidentiary submissions supports a conclusion that it has any contacts with the State of Alabama at all.
In support of his argument that the trial court has personal jurisdiction over BCAM, Ford relies on the statement in Washington McKenzie's affidavit that "[w]hen I purchased workers' compensation insurance for [McKenzie] from [BCAM] I was told that it would provide insurance to [McKenzie] in the event it was sued in the State of Alabama" and on the sentence in the coverage agreement between BCAM and McKenzie that states: "[i]f you are sued, the original suit . . . must be brought in the United States of America, its territories or possessions, or Canada." Ford also supports his argument that personal jurisdiction over BCAM exists with his affidavit testimony indicating that BCAM paid him worker's compensation benefits. Thus, Ford asserts that BCAM's alleged statement that it would provide insurance in the event that McKenzie was sued in Alabama, the requirement in the coverage agreement that any suit be brought within the United States or Canada, and BCAM's payment of worker's compensation benefits to Ford together are sufficient to create specific jurisdiction over BCAM in Alabama. We must determine, then, whether those facts, considered in a light most favorable to Ford, create a question of fact concerning whether BCAM's actions were "purposefully directed" toward Alabama such that BCAM should have "` "reasonably anticipate[d] being haled into court here."'"Ex-parte Dill, Dill, Carr, Stonbraker Hutchings, 866 So.2d at 525. We must also determine "the degree to which the defendant `purposefully avail[ed] itself of the privilege of conducting activities within the forum.'"Portera, 996 F.Supp. at 1423.
Even accepting as true the statement in Washington McKenzie's affidavit that he was told that BCAM would provide insurance to McKenzie if McKenzie was sued in the State of Alabama, as we must at the summary-judgment stage, see Nationwide Prop. Cos. Co. v. DPF Architects, P.C., 792 So.2d at 372, considering the requirement in the coverage agreement that any suit against McKenzie must be brought within the United States or Canada, and considering the fact that BCAM paid benefits to Ford for his injuries, we cannot conclude that BCAM "purposefully directed" its actions at the State of Alabama. In addition, we cannot conclude that BCAM "purposefully availed itself of the privilege of conducting activities within" the State of Alabama. Because we can find no contacts sufficient for an exercise of specific in personam jurisdiction over BCAM, we grant the petition, issue the writ, and order the trial court to dismiss Ford's action against BCAM. We pretermit discussion of the other arguments advanced by BCAM.
PETITION GRANTED; WRIT ISSUED.
THOMPSON, P.J., and PITTMAN and BRYAN, JJ., concur.
 MOORE, J., recuses himself. *Page 1010