THOMAS, Judge.
Noy Krukenberg ("the mother") is the mother of two children, C.A and G.A. ("the children"). The children were born in Texas to the mother and Michael Aumock ("the father"), who were never married. In June 2012, the mother and the children moved to Alabama. In August 2012, the father's mother, Gwendolyn Riggs ("the paternal grandmother"), sought grandparent visitation in an action she commenced in the District Court of Dallas County, Texas ("the Texas court"); the Texas court awarded the paternal grandmother specific visitation with the children in a November 2013 judgment ("the Texas judgment").
In September 2014, the paternal grandmother commenced an action ("the 2014 enforcement action") in the Lee Circuit Court ("the circuit court") seeking to register and enforce the Texas judgment pursuant to Ala. Code 1975, § 30-3B-305, seeking to hold the mother in contempt of the Texas judgment, or, in the alternative, seeking grandparent visitation under Alabama law if the Texas judgment was not successfully registered. The mother did not request a hearing to contest the validity of the registration of the Texas judgment, and the registration of the Texas judgment was confirmed as a matter of law. See § 30-3B-305(e). In March 2015, the circuit court entered an order indicating that the Texas judgment had been "domesticated," indicating that the parties were to be allowed an opportunity to "perform in good faith under the terms of the Texas [judgment] during spring break and summer 2015," and ordering the parties to provide a status update by September 1, 2015.
*678 After a hearing in the 2014 enforcement action, the circuit court entered a judgment on December 23, 2015 ("the December 2015 judgment"), holding the mother in contempt for her failure to allow the paternal grandmother to exercise visitation. The circuit court specifically recognized in the December 2015 judgment that it lacked the power to modify the Texas judgment and that it was merely enforcing it under Ala. Code 1975, § 30-3B-306. We note that the enforcement of the Texas judgment did not change the Texas judgment into an Alabama child-custody determination. See Official Comment to § 30-3B-306 (stating that, even when registered and enforced by a sister state, a child-custody determination "remains a custody determination of the state that issued it"). No appeal was taken from the December 2015 judgment.
In September 2014, while the 2014 enforcement action was pending in the circuit court, the mother's husband, Shane Krukenberg ("the stepfather"), filed in the Lee Probate Court ("the probate court") a complaint seeking to adopt the children ("the adoption action") pursuant to Ala. Code 1975, § 26-10A-27, which governs stepparent adoptions. The adoption action was later transferred to the Lee Juvenile Court ("the juvenile court") and remained pending until a final hearing, which was held on July 20, 2017. The juvenile court denied the adoption.
The mother, the stepfather, and the children moved to Kentucky in July 2015. In June 2017, the paternal grandmother filed an action in the circuit court seeking to again hold the mother in contempt of the Texas judgment ("the 2017 enforcement action"). The paternal grandmother had the mother served in the 2017 enforcement action at the mother's residence in Kentucky.
The mother filed in the circuit court a motion to dismiss the 2017 enforcement action. She attached to that motion an affidavit averring that she and the children had lived in Kentucky since July 2015. On July 20, 2017, the circuit court entered an order denying the mother's motion, stating that "this court has continuing jurisdiction to enforce its orders. Further, it is this court's intention to retain jurisdiction until further orders to the contrary." In the same order, the circuit court set the contempt issue for a trial on August 16, 2017, and ordered that the paternal grandmother be permitted to take the children with her for a period of visitation to end by August 12, 2017. The July 20, 2017, order was personally served on the mother while she was at the trial of the adoption action.
The mother filed this petition for the writ of mandamus on July 25, 2017. On the same date, she also sought a stay of that portion of the July 20, 2017, order setting a trial on the contempt issues for August 16, 2017, and of that portion of the order permitting the paternal grandmother to exercise visitation with the children. We granted the stay of the August 16, 2017, trial, denied the stay insofar as it sought relief from the order mandating visitation with the paternal grandmother, and called for an answer to the petition, which has been filed.[1] The mother amended *679 her petition on July 26, 2017, to add an additional argument relating to the validity of the December 2015 judgment.
"The denial of a motion to dismiss for lack of jurisdiction is reviewable upon a timely filed petition for a writ of mandamus. Ex parte Flint Constr. Co., 775 So.2d 805, 808 (Ala. 2000) ; Drummond Co. v. Alabama Dep't of Transp., 937 So.2d 56, 57 (Ala. 2006). With regard to an appellate court's consideration of a petition for a writ of mandamus, our supreme court has stated:
" 'This Court has consistently held that the writ of mandamus is an extraordinary and drastic writ and that a party seeking such a writ must meet certain criteria. We will issue the writ of mandamus only when (1) the petitioner has a clear legal right to the relief sought; (2) the respondent has an imperative duty to perform and has refused to do so; (3) the petitioner has no other adequate remedy; and (4) this Court's jurisdiction is properly invoked. Ex parte Mercury Fin. Corp., 715 So.2d 196, 198 (Ala. 1997). Because mandamus is an extraordinary remedy, the standard by which this Court reviews a petition for the writ of mandamus is to determine whether the trial court has clearly abused its discretion. See Ex parte Rudolph, 515 So.2d 704, 706 (Ala. 1987).' "
Ex parte Diefenbach, 64 So.3d 1091, 1093 (Ala. Civ. App. 2010) (quoting Ex parte Flint Constr. Co., 775 So.2d 805, 808 (Ala. 2000) ).
The mother raises three arguments in her petition and amended petition. She first contends that the circuit court lacks subject-matter jurisdiction over the 2017 enforcement action because she and the children no longer live in Alabama. She then argues that the circuit court lacks personal jurisdiction over her. Finally, the mother argues that, because the paternal grandmother did not strictly comply with the requirements of § 30-3B-305 when she filed her complaint seeking registration of the Texas judgment in the 2014 enforcement action, the December 2015 judgment is void and the circuit court necessarily lacks subject-matter jurisdiction over the 2017 enforcement action because the Texas judgment has never been properly registered in Alabama.
We will first consider the mother's argument that the circuit court lacks personal jurisdiction over her. She contends that, although she lived in Alabama in the past, she no longer has minimum contacts with the state sufficient to permit the circuit court to exercise either general or specific in personam jurisdiction over her. We agree.
As the mother contends, the fact that she is no longer an Alabama resident requires *680 us to determine whether an Alabama court may exercise jurisdiction over her.
" Rule 4.2(b), Ala. R. Civ. P., permits Alabama courts to exercise personal jurisdiction over an out-of-state defendant. It provides, in pertinent part, as follows:
" '(b) Basis for Out-of-State Service. An appropriate basis exists for service of process outside of this state upon a person or entity in any action in this state when the person or entity has such contacts with this state that the prosecution of the action against the person or entity in this state is not inconsistent with the constitution of this state or the Constitution of the United States ....'
"Regarding Rule 4.2(b), [the Alabama Supreme] Court has said:
" 'In accordance with the plain language of Rule 4.2, both before and after the 2004 amendment, Alabama's long-arm rule consistently has been interpreted by this Court to extend the jurisdiction of Alabama courts to the permissible limits of due process. Duke v. Young, 496 So.2d 37 (Ala. 1986) ; DeSotacho, Inc. v. Valnit Indus., Inc., 350 So.2d 447 (Ala. 1977). As this Court reiterated in Ex parte McInnis, 820 So.2d 795, 802 (Ala. 2001) (quoting Sudduth v. Howard, 646 So.2d 664, 667 (Ala. 1994) ), and even more recently in Hiller Investments Inc. v. Insultech Group, Inc., 957 So.2d 1111, 1115 (Ala. 2006) : " Rule 4.2, Ala. R. Civ. P., extends the personal jurisdiction of the Alabama courts to the limit of due process under the federal and state constitutions." (Emphasis added.)'
" Ex parte DBI, Inc., 23 So.3d 635, 643 (Ala. 2009)."
Ex parte Alamo Title Co., 128 So.3d 700, 709 (Ala. 2013).
The Alabama Supreme Court has explained the limits of due process in regard to service of process on a nonresident defendant as follows:
"The Due Process Clause of the Fourteenth Amendment permits a forum state to subject a nonresident defendant to its courts only when that defendant has sufficient 'minimum contacts' with the forum state. International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The critical question with regard to the nonresident defendant's contacts is whether the contacts are such that the nonresident defendant ' "should reasonably anticipate being haled into court" ' in the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)."
Elliott v. Van Kleef, 830 So.2d 726, 730 (Ala. 2002).
There are two bases for in personam jurisdiction over a nonresident defendant: general and specific. Ex parte J.R.W., 667 So.2d 74 (Ala. 1994) (quoting Murray v. Alfab, Inc., 601 So.2d 878 (Ala. 1992) ). As our supreme court explained in Ex parte J.R.W. :
" 'General jurisdiction applies where a defendant's activities in the state are "substantial" and "continuous and systematic," even if the cause of action is unrelated to those activities. Data Disc, Inc. v. Systems Tech. Assoc., 557 F.2d 1280, 1287 (9th Cir. 1977). Where general jurisdiction does not exist, a court may still exercise specific jurisdiction if the defendant has sufficient contacts with the forum state in relation to the cause of action.
*681 " 'In a particular case, the kind of jurisdiction obtained depends upon the nature and the quality of the contacts, but in any case it is essential that there be some act by which the defendant purposely avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958).' "
Ex parte J.R.W., 667 So.2d at 83 (quoting Murray, 601 So.2d at 883-84 ) (emphasis added in Ex parte J.R.W. ).
The mother convincingly argues that she does not have sufficient contacts with Alabama to establish general jurisdiction. The mother and the children lived in Alabama until July 2015, but she and the children no longer live in the state. See Hinrichs v. General Motors of Canada, Ltd., 222 So.3d 1114, 1123 (Ala. 2016) (quoting Daimler AG v. Bauman, 571 U.S. 117, 137, 134 S.Ct. 746, 760, 187 L.Ed.2d 624 (2014), quoting in turn Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011) ) (" ' "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." ' "). The materials before us contain nothing establishing that the mother was domiciled in Alabama or engaged in "substantial" or "continuous and systematic" activities in Alabama after July 2015. Thus, we will next consider whether the mother had contact with Alabama sufficient to give rise to specific jurisdiction.
Our supreme court has explained that "[t]he focal point of the analysis [of specific jurisdiction] is the alleged 'contacts' which a defendant has with the forum state. Courts look to 'the relationship among the defendant, the forum, and the litigation.' " Duke v. Young, 496 So.2d 37, 39 (Ala. 1986) (quoting Shaffer v. Heitner, 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977) ). In the examination of these contacts, "[c]rucial to the analysis is the element of foreseeability of the consequences of the defendant's activities." Duke, 496 So.2d at 39. As the Duke Court stated, "[t]here must be a clear, firm [nexus] between the acts of the defendant and the consequences complained of in order to establish the necessary contacts." Id.
The paternal grandmother focuses on the fact that the adoption action remained pending in Alabama. She contends that the "mother invoked the benefits and protections of the law of Alabama as recently as July 20, 2017, when she sought a stepparent adoption order on behalf of [the stepfather] in [the juvenile court]." Indeed, the materials reflect that a trial in the stepfather's adoption action was held on July 20, 2017; however, the adoption action had been pending in Alabama since 2014. The fact that the stepfather maintained the adoption action and prosecuted it to its conclusion does not compel the conclusion that the mother, who was not a party to that action, "invoked" any benefits or protections of Alabama law. Jurisdiction over the adoption action attached at the time the adoption petition was filed in September 2014, when the stepfather, the mother, and the children resided in Alabama; that jurisdiction continued despite the relocation of those persons. See Steensland v. Alabama Judicial Inquiry Comm'n, 87 So.3d 535, 542 (Ala. 2012) (quoting In re Peoples, 296 N.C. 109, 146, 250 S.E.2d 890, 911 (1978) ) (explaining that jurisdiction of a court is not typically " 'ousted by subsequent events' " and continues until the judicial process is completed). Thus, we conclude that the stepfather's continuation of the adoption action does not provide a *682 basis upon which to rest in personam jurisdiction over the mother.
Furthermore, the adoption action is not related to the actions that form the basis of the paternal grandmother's enforcement action, which were that the mother had refused to allow the paternal grandmother to exercise her spring break 2017 and her summer 2017 visitation pursuant to the Texas judgment. The paternal grandmother does not explain how the adoption action relates to the mother's allegedly contemptuous denial of visitation. Nothing in the materials before this court indicates that the actions of the mother in allegedly denying visitation occurred in Alabama. Instead, it appears that those actions necessarily occurred in Kentucky, where the mother and the children reside. Thus, we have before us no indication that the mother has had any contacts with Alabama related to the 2017 enforcement action instituted by the paternal grandmother.
Because the materials before us demonstrate that the mother has had no contacts with Alabama since 2015 sufficient to give rise to general in personam jurisdiction and no contacts relating to the allegations giving rise to the 2017 enforcement action sufficient to create specific in personam jurisdiction, the mother has established that she is entitled to the relief that she requests. We therefore grant the mother's petition and order the circuit court to dismiss the 2017 enforcement action. In light of our determination that the circuit court lacks in personam jurisdiction over the mother, we pretermit consideration of her other arguments.
PETITION GRANTED; WRIT ISSUED.
Thompson, P.J., and Pittman, J., concur.
Moore, J., concurs in the result, with writing.
Donaldson, J., concurs in the result, without writing.
MOORE, Judge, concurring in the result.
In 2015, the Lee Circuit Court ("the trial court") registered an order entered by the District Court of Dallas County, Texas, which granted Gwendolyn Riggs ("the paternal grandmother") grandparent visitation with the children of Noy Krukenberg ("the mother"). On June 14, 2017, the paternal grandmother filed in the trial court a civil action alleging that the mother had contemptuously violated the Texas grandparent-visitation order that had previously been registered by the trial court. The mother moved to dismiss the contempt action on the grounds of lack of subject-matter jurisdiction and lack of personal jurisdiction. In her motion, the mother asserted that she and the children had moved to Kentucky in 2015 and had resided there since, facts the paternal grandmother does not contest. The trial court denied the motion to dismiss, prompting the mother to file with this court a petition for a writ of mandamus directing the trial court to dismiss the contempt action.
When an Alabama court registers a foreign child-custody determination, like the Texas grandparent-visitation order in this case, see Ala. Code 1975, § 30-3B-102(3) (defining "child custody determination" to include visitation orders), the order remains a custody determination of the foreign state. See Official Comment to Ala. Code 1975, § 30-3B-306. Nevertheless, an Alabama court that has registered a foreign child-custody determination "may grant any relief normally available under the law of this state to enforce a registered child custody determination made by a court of another state." Ala. Code 1975, § 30-3B-306(a). Under § 30-3B-306(a), the trial court has jurisdiction to grant the paternal grandmother any relief "normally available" under Alabama law to enforce the Texas grandparent-visitation order.
*683 In Ex parte Stouffer, 214 So.3d 1192 (Ala. Civ. App. 2016), a majority of this court held that a court of this state may enforce its own child-custody determination even though the children and the parents no longer reside in Alabama. I dissented to that holding because I believe the drafters of Alabama's version of the Uniform Child Custody Jurisdiction and Enforcement Act ("the UCCJEA"), Ala. Code 1975, § 30-3B-101 et seq., intended that a court would lose all subject-matter jurisdiction over a child-custody determination once the children and the parents no longer have any connection to the State of Alabama. In Ex parte Gallant, 221 So.3d 1120 (Ala. Civ. App. 2016), I authored the opinion of the court, in which all the judges of this court concurred, which perpetuated the holding in Ex parte Stouffer, although I remained convinced that the UCCJEA does not bestow jurisdiction on an Alabama court to enforce child-custody determinations when the parties and the children involved have long departed from Alabama to reside in another state and they no longer maintain any connection to this state. This case differs from Ex parte Stouffer and Ex parte Gallant in that the trial court is being asked to enforce a foreign child-custody determination. However, the same principle of jurisdiction applies because § 30-3B-306 does not confer greater jurisdiction on an Alabama court to enforce a foreign child-custody determination than the same court would have to enforce its own child-custody determination.
For the same reasons I dissented in Ex parte Stouffer, I would hold that the trial court in this case lacks subject-matter jurisdiction to enforce the Texas grandparent-visitation order. When the paternal grandmother commenced the contempt action, which is a separate action from the original registration action, see Decker v. Decker, 984 So.2d 1216 (Ala. Civ. App. 2007), the mother and the children had been residing in Kentucky for approximately two years. The paternal grandmother has at all material times resided in Texas. The parties and the children have no substantial connection to this state. Accordingly, in my opinion, the trial court lacks subject-matter jurisdiction to enforce the Texas grandparent-visitation order through a contempt finding or otherwise because such relief would not be "normally available" had the trial court entered the grandparent-visitation order itself.
Because I conclude that the trial court lacks subject-matter jurisdiction over the contempt action, I concur in the decision to grant the petition for a writ of mandamus, but I find no need to discuss the issue of personal jurisdiction.

When considering a motion to stay a trial court's judgment pending appeal, this court considers the following factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." Hilton v. Braunskill, 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987). In cases involving the custody of children, this court also considers the best interest of the children involved.
In this particular instance, we considered that the mother had some likelihood of success on the merits, but the stay motion and the accompanying materials did not indicate that the allowance of visitation pursuant to the Texas judgment would irreparably injure the mother or the children. We noted that the children were 15 years old and that, although the materials indicated that the father was incarcerated in Texas at some point, the basis for his incarceration or its length were not revealed in the petition or the stay motion. Thus, we concluded that the stay motion lacked support for any conclusion that a stay should be granted to protect the mother or the children from the visitation awarded in the July 20, 2017, order. However, in light of the possibility of the mother's success on the merits and the probable injury that would result from the mother's being required to defend the contempt charges if we were to later decide that the circuit court lacked jurisdiction, we decided to stay the trial set for August 16, 2017, pending resolution of the mother's mandamus petition.